Chaim ARLOSOROFF, Appellee,

v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION, Appellant,

and

Duke University, Appellee.

No. 83–1702.

United States Court of Appeals,
Fourth Circuit.

Argued May 10, 1984.

Decided Oct. 25, 1984.

Rehearings and Rehearing En Banc
Denied Jan. 28, 1985.

John J. Kitchin, Kansas City, Mo.
(George H. Gangwere, Swanson, Midgley,
Gangwere, Clarke & Kitchin, Kansas City,
Mo., Lewis A. Cheek, Josiah S. Murray, III,
Newsom, Graham, Hedrick, Murray, Bry-
son & Kennon, Durham, N.C., on brief) for
appellant.

David A. Harlow, Durham, N.C. (Eliza-
beth P. Potter, Harlow & Corvette, P.A.,
Durham, N.C., on brief), for appellee Arlo-
soroff.

Carl W. Vogt, Washington, D.C. (Robert
A. Burgoyne, Fulbright & Jaworski, Wash-
ington, D.C., N.A. Ciompi, Powe, Porter,

Alphin & Whichard, P.A., Durham, N.C., on brief), for appellee Duke University.

Before RUSSELL and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

The district court granted a preliminary injunction prohibiting the National Collegiate Athletic Association from enforcing one of its eligibility rules against the plaintiff, a student at Duke University. It treated the acts of the NCAA as "state action," making applicable the Equal Protection and Due Process Clauses of the Fourteenth Amendment. We reverse, for we find no state action.

## I.

The National Collegiate Athletic Association is a voluntary, unincorporated association of nearly one thousand four-year colleges and universities. Approximately one-half of its members are public institutions, state and federal.

The NCAA conducts annual conventions in which all member institutions are represented. Through these conventions, it promulgates rules to insure minimum standards for scholarship, sportsmanship and amateurism. Each participating institution must abide by the rules, and an elected council is empowered to enforce the rules and can impose sanctions upon schools and players found to have been in violation of the rules.

The plaintiff is an Israeli citizen. He was discharged from the Israeli army in March 1979 when he was twenty-two years old. Thereafter, he participated in some seventeen amateur tennis tournaments. He was a member of Israel's Davis Cup team. In August 1981, he enrolled at Duke University, and in his freshman year played the number one singles position on Duke's tennis team.[1] After the plaintiff's freshman year, however, the NCAA declared him ineligible for further competition on the basis of NCAA Bylaw 5–1–(d)–(3), which had been adopted by a majority vote of the member institutions at the January 1980 convention.

Bylaw 5–1–(d)–(3) provides that any participation in "organized competition in a sport during each twelve month period after the student's 20th birthday and prior to matriculation with a member institution should count as one year of varsity competition in that sport." As initially adopted, participation in organized competition while in military service was excepted. The plaintiff, however, had spent three years in organized tennis after his discharge from the Israeli army and before his matriculation at Duke. Because of that, the NCAA ruled that his freshman year was the final year of his eligibility.

This action was initially brought in a state court against Duke and the NCAA. The plaintiff asked that each be enjoined from enforcing the Bylaw. He claimed a denial of due process and equal protection. The equal protection claim is based upon an allegation that, although the Bylaw was neutral on its face, it was designed to exclude aliens from competition in the NCAA affiliated institutions.[2]

The state court granted a temporary restraining order, but Duke and the NCAA promptly removed the case to the United States District Court for the Middle District of North Carolina. There the plaintiff requested preliminary injunctions, while Duke filed a cross claim against the NCAA seeking a preliminary injunction on due process grounds.[3]

---

1. The Duke tennis team won the Atlantic Coast Conference championship that year, and the plaintiff was elected to the All American tennis team.

2. In *Howard University v. NCAA,* 510 F.2d 213 (D.C.Cir.1975), the court struck down a predecessor Bylaw which overtly applied only to al-

iens. Bylaw 5–1–(d)–(3) was adopted as a replacement.

3. The due process claim was founded upon the fact that the Bylaw applied to play in which the plaintiff had engaged before the Bylaw was enacted or before it became effective.

## II.

Although the NCAA is not a public institution, most of the courts considering the matter have held that its actions are state actions subject to the limitations of the Fourteenth Amendment. *E.g., Regents of the University of Minnesota v. NCAA,* 560 F.2d 352 (8th Cir.1977); *Howard University v. NCAA,* 510 F.2d 213 (D.C.Cir.1975); *Parish v. NCAA,* 506 F.2d 1028 (5th Cir. 1975); *Associated Students, Inc. v. NCAA,* 493 F.2d 1251 (9th Cir.1974). *But see McDonald v. NCAA,* 370 F.Supp. 625 (C.D. Cal.1975). It was variously said that the NCAA performs a public function regulating intercollegiate athletics, *see Parish v. NCAA,* 506 F.2d 1032, that there was substantial interdependence between the NCAA and the state institutions that comprise about one-half of its membership, *e.g., Howard University,* 510 F.2d at 219, and that the state institutional members played a "substantial although admittedly not pervasive" role in NCAA funding and decision making. *Parish,* 506 F.2d 1032, *see Howard University,* 510 F.2d at 219.

These earlier cases rested upon the notion that indirect involvement of state governments could convert what otherwise would be considered private conduct into state action. That notion has now been rejected by the Supreme Court, however, and its decisions require a different conclusion. *Rendell-Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982).

## III.

■ There is no precise formula to determine whether otherwise private conduct constitutes "state action." After "sifting facts and weighing circumstances," *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961), the inquiry in each case is whether the conduct is fairly attributable to the state.[4] *Lugar v. Edmondson Oil*

*Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). None of the circumstances suggested by Duke and the plaintiff, however, permit an attribution of state action to the NCAA.

### A.

■ In a sense, the NCAA may be said to perform a public function as the overseer of the nation's intercollegiate athletics. It introduces some order into the conduct of its programs and enforces uniform rules of eligibility. The regulation of intercollegiate athletics, however, is not a function "traditionally exclusively reserved to the state." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1975). The operation of a company town is subject to constitutional limitations, *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), for the governance of townships is traditionally a public function, but neither the distribution of electricity by a regulated utility nor the operation of a school, *Rendell-Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418 (1982), is traditionally an exclusive prerogative of the state.

The fact that NCAA's regulatory function may be of some public service lends no support to the finding of state action, for the function is not one traditionally reserved to the state.

### B.

■ Formally, the NCAA is a private entity. Approximately one-half of its members are public institutions, and those institutions provide more than one-half of the NCAA's revenues. Those facts, however, do not alter the basic character of the NCAA as a voluntary association of public and private institutions. Nor do they begin to suggest that the public institutions, in contrast to the private institutional members, caused or procured the adoption of the Bylaw.

---

**4.** We assume, without deciding, that the Fourteenth Amendment's requirement that no state shall deny due process or equal protection ap-

plies to a group of states acting in concert. In this case, however, there is no proof of concerted action in the usual sense of the word.

It is not enough that an institution is highly regulated and subsidized by a state. If the state in its regulatory or subsidizing function does not order or cause the action complained of, and the function is not one traditionally reserved to the state, there is no state action. A private school's discharge of employees was not state action in spite of the fact that the school was extensively regulated and highly subsidized by the state. The state's regulatory and funding activities had not compelled the discharge of those employees, *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *see also Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), just as they had not compelled a private nursing home's involuntary transfer and discharge of a group of Medicaid patients. *See also Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1982) (autonomous decisions of public defender not under color of law).

State action was found in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), for the clerk of court and the sheriff were active participants, with the creditors, in the issuance and service of the writ of attachment. *Cf. Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) in which the creditor acted alone though under the authority of state law.

*Rendell-Baker*, *Blum* and *Jackson v. Metropolitan Edison Co.*, not *Lugar*, control here. There is no suggestion in this case that the representatives of the state institutions joined together to vote as a bloc to effect adoption of the Bylaw over the objection of private institutions. There is simply no showing that the state institutions controlled or directed the result.

The NCAA serves the common need of member institutions for regulation of athletics while correlating their diverse interests. Through the representatives of all of the members Bylaw 5–1–(d)–(3) was adopted, not as a result of governmental compulsion, but in the service of the common interests of the members. The adop-

tion of the Bylaw was private conduct, not state action.

### IV.

The injunction issued by the district court is vacated.

**VACATED**