Thomas McHALE, Plaintiff,

v.

CORNELL UNIVERSITY and the
National Collegiate Athletic
Association, Defendants.

No. 85–CV–944.

United States District Court,
N.D. New York.

Oct. 18, 1985.

Schulte, Roth & Zabel, New York City,
for plaintiff; Stacey J. Moritz, of counsel.

Buyoucos, Barney, Grossman & Roth,
Ithaca, N.Y., for plaintiff; Nelson E. Roth,
of counsel.

Gilbert, Segall & Young, New York City,
Lombardi, Devorsetz, Stinziano & Smith,
Syracuse, N.Y., for defendant NCAA; Elihu Inselbuch, Sidney Devorsetz, of counsel.

Thomas Mead Santoro, Ithaca, N.Y., for
defendant Cornell.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Plaintiff Thomas McHale has brought
this action against Cornell University (Cornell) and the National Collegiate Athletic
Association (NCAA), seeking to enjoin the
defendants from denying him eligibility to
play intercollegiate football for Cornell during the Fall 1985 season. The complaint
alleges that the NCAA's application of its
eligibility rules, specifically Bylaw 5–1–(j)–
(7) (the transfer rule), violates the Equal
Protection Clause of the Fourteenth
Amendment, the Due Process Clause of the
Fourteenth Amendment, and other constitutional and contractual rights of the plaintiff.[1] A hearing was held on September 26,

---

1. The complaint also alleged that application of NCAA Bylaw 5–1–(j)–(7) unduly burdened plain-

1985, and a temporary restraining order was issued. Based on the evidence presented at that time and further submissions by the parties, the court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

Plaintiff is presently enrolled at Cornell and is in good academic standing. Defendant NCAA is a voluntary unincorporated association comprised of more than 900 colleges and universities. Cornell, as a member of the NCAA's Division I, must follow the eligibility rules that the NCAA has established for student athletes.[2] These rules include Bylaw 5–1–(j)–(7) which provides that a student who transfers to a Division I school must complete one year at the new institution before the student can establish eligibility to compete in intercollegiate athletics.[3]

Plaintiff attended the University of Maryland during the 1982–83 and 1983–84 academic years where he participated in two years of college football. He withdrew from Maryland in the summer of 1984 and transferred to Cornell in January 1985 where he is now continuing his studies. Cornell did not recruit plaintiff and does not offer athletic scholarships.

Plaintiff contends that the NCAA's transfer rule should not apply to him because he was not recruited, he transferred to Cornell for academic reasons alone, and that therefore his competing will not subvert the purposes of the rule.[4] Cornell in support of the plaintiff's position inquired of the NCAA as to plaintiff's football eligibility this season. The NCAA advised Cornell that the transfer rule prohibits plaintiff's participation this season and that plaintiff does not qualify for a waiver of the residency requirement under NCAA Bylaw 5–1–m. Plaintiff now seeks a preliminary injunction enjoining defendants from prohibiting his playing football this season.

## DISCUSSION

In this Circuit a preliminary injunction will issue upon a showing that irreparable injury is likely to occur if such relief is not granted and a demonstration of either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation coupled with a balance of hardships tipping decidedly in the movant's favor. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam). In the present ac-

---

tiff's fundamental right to travel thereby depriving him of rights guaranteed by the Privileges and Immunities Clause of Article IV and the Fourteenth Amendment. Plaintiff also advanced theories based upon breach of contract by Cornell and tortious interference with contractual rights by NCAA.

**2.** NCAA Bylaw 11–1–(d) provides in relevant part:

A member of Division I shall conduct its regular-season competition under eligibility rules at least as stringent as those provisions of Bylaw 5 applicable to members of Division I.

**3.** NCAA Bylaw 5–1–(j)–(7) provides in relevant part:

A transfer student from a four-year institution shall not be eligible for any NCAA championship until the student has fulfilled a residence requirement of one full academic year (two full semesters or three full quarters), and one full calendar year has elapsed from the first regular registration and attendance date at the certifying Division I or Division II institu-

tion. At a Division III institution, eligibility is not permitted for one calendar year from the student's official withdrawal date from the previous institution.

(i) If the first day of classes of the regular academic term (semester or quarter) in which the transfer student would become eligible at the certifying institution is earlier than the completion of the one-calendar-year requirement, and if the student has fulfilled the one-academic-year requirement, then the student shall be eligible on that first day of classes.

(ii) If the date of the first scheduled intercollegiate contest falls earlier (between semesters) than the first day of classes of the regular academic term (semester or quarter) in which the student would become eligible, and if the student has fulfilled the one-academic-year requirement, then the student shall be eligible on that playing date.

**4.** The NCAA suggested three purposes of the transfer rule: (1) to prevent transfers solely for athletic reasons, (2) to avoid exploitation of student athletes, and (3) to allow transfer students time to adjust to their new environment.

tion, a denial of the preliminary injunction will effectively prevent the plaintiff from competing in intercollegiate athletics this season. Moreover, application of the NCAA rules together with the Ivy League rules may also render the plaintiff ineligible to compete in 1987.[5] As a result, the plaintiff's participation in college football may well be restricted to three years. This court recognizes the important role of athletics in adolescent development and education and finds, therefore, that plaintiff has established a likelihood of irreparable injury. *See Kampmeier v. Nyquist,* 553 F.2d 296 (2d Cir.1977); *see also Holmes v. NCAA and Iona College,* No. 83 Civ. 8019 (S.D.N.Y. Nov. 30, 1983) (finding likelihood of irreparable harm where application of NCAA Bylaw 5–1–(j)–(7) would prevent plaintiff from playing hockey for Iona College during his junior year). The propriety of a preliminary injunction here, therefore, must rise or fall on the merits of the plaintiff's claims.

42 U.S.C. § 1983 provides a remedy for deprivations of federally protected rights when caused by persons acting under color of state law. *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). A likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation on the issue of state action is an essential element for the granting of preliminary injunctive relief

against either or both of the defendants herein. The court finds that the plaintiff has failed to meet this burden.

Although courts in the past have found that the NCAA's actions constitute state action, *e.g., Howard University v. NCAA,* 510 F.2d 213 (D.C.Cir.1975) and *Parish v. NCAA,* 506 F.2d 1028 (5th Cir.1975), the Supreme Court's decisions in *Rendell-Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) and *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) now mandate a different decision.

In order to succeed on the merits as to the NCAA, plaintiff must demonstrate (1) that the state supported members of the NCAA exercised coercive power or provided such significant encouragement, either overt or covert, in promulgating Bylaw 5–1–(j)–(7), that the choice must be deemed to be that of the state; or (2) that the NCAA, in applying its rules, has performed a public function which has traditionally been the exclusive prerogative of the state. *Rendell-Baker,* 457 U.S. at 840–42, 102 S.Ct. at 2770–72; *Blum,* 457 U.S. at 1004–5, 102 S.Ct. at 2785–86. The court finds that the plaintiff has not shown that the state supported members of the NCAA convention voted together in opposition to the wishes of the private members or otherwise controlled the decision to adopt the transfer rule. *See Arlosoroff v. NCAA,* 746 F.2d 1019 (4th Cir.1984); *see also Gra-*

**5.** Cornell is also a member of the Ivy League. Part II, Section 3, Rule 6, NOTE 2 of the rules promulgated by the Ivy League provides that student athletes are eligible for athletic competition for only four years from the date of their *initial participation. The applicable rule reads as follows:*

Years of Competition
  a. A student shall not represent an institution in intercollegiate athletic competition;
  (1) for more than one freshman year.
  (2) for more than three varsity years, except that freshman may compete on varsity teams other than in crew and football.
NOTE 1: This Committee unanimously agreed that students who leave college in the middle of an academic year for legitimate reasons should not be penalized.
NOTE 2: Ninth Term and Five Year Students. All students are expected to use their years of

eligibility in a particular sport during the first four seasons of that sport (even though they are formally enrolled in a five year program) provided the student is enrolled as a full-time student during each of those seasons. All requests for eligibility in a fifth season must be presented to the Ivy Group. Exceptions will normally be granted in cases of illness or emergencies beyond the student's control. In deciding other requests for exceptions the particular academic circumstances will be considered.
February high school graduates who spend a term in a local college while waiting to begin their formal college career in September will generally not be regarded as ineligible in their ninth term. In any event, before a student may compete in a ninth or subsequent term of college, the case must be cleared by the Group.

**70**

sek v. Mauceri, 582 F.2d 203 (2d Cir.1978), cert. denied, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 91 (1979) (finding no state action where Legal Aid Society which received substantial government funding made independent decision to discharge attorney). The fact that approximately one-half of the NCAA's members are state-supported institutions, which fact undoubtedly generates revenue for the NCAA does not alone establish state action. Under *Rendell-Baker* and *Blum,* state regulation and subsidization of an institution alone will not convert private action into state action. Moreover, the plaintiff has failed to demonstrate that the NCAA performs a function "traditionally, the exclusive prerogative of the State." *Rendell-Baker,* 457 U.S. at 842, 102 S.Ct. at 2772; *Blum,* 457 U.S. at 1001, 102 S.Ct. at 2784; *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 353, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974). Although the NCAA may perform a public function in overseeing the nation's intercollegiate athletics, it remains a private institution. Regulation of intercollegiate sports cannot fairly be said to be traditionally and exclusively a state function. Constitutional standards are only invoked where it can be shown that the state is responsible for the specific conduct of which the plaintiff complains. *Blum,* 457 U.S. at 1004, 102 S.Ct. at 2785.

Based on the evidence presented, the court finds that plaintiff has failed to demonstrate that the NCAA's actions are reasonably attributable to the state. *See Arlosoroff v. NCAA,* 746 F.2d 1019; *see also Ponce v. Basketball Feder. of Puerto Rico,* 760 F.2d 375 (1st Cir.1985). In addition, compliance by Cornell University, a private education corporation, with the NCAA rule does not constitute state action. The court finds that the plaintiff has not established the level of state-private co-operation required under *Rendell-Baker* and *Blum.* Plaintiff's allegations of government regulation and financial assistance do not support a finding of state action on the part of Cornell nor does their contention that the university performs a public function. *See Rendell-Baker,* 457 U.S. 830, 102 S.Ct. at

2765; *Blum,* 457 U.S. 991, 102 S.Ct. at 2779; *see also Dukes v. Brandeis University,* No. 83–CV–465 (N.D.N.Y. Nov. 1, 1983); *Weise v. Syracuse University,* 553 F.Supp. 675 (N.D.N.Y.1982).

Accordingly, the plaintiff, having not met his burden of showing a likelihood of success on the merits or sufficiently serious question going to the merits to make them a fair ground for litigation, is denied preliminary injunctive relief herein.

IT IS SO ORDERED.