Stephen GRAHAM and Brett Lohrke, Plaintiffs-Appellants,

v.

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, University of Louisville, Robert Weber, and Bill Olson, Defendants-Appellees.

No. 85-5980.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 22, 1986.

Decided Nov. 6, 1986.

Nader G. Shunnarah, Louisville, Ky., for plaintiffs-appellants.

Schuyler Olt (argued), Greenebaum, Doll and McDonald, Edward H. Stopher, Robert M. Brooks (argued), Louisville, Ky., John J. Kitchin, Kansas City, Mo., for defendants-appellees.

Before KEITH and KENNEDY, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Plaintiffs Stephen Graham and Brett Lohrke appeal from the judgment of the district court dismissing their action brought pursuant to 42 U.S.C. § 1983. The plaintiffs claim that dismissal was improper because they had sufficiently alleged that certain actions taken by the defendants infringed upon their right of access to the courts. For the reasons that follow, we affirm the district court.

## I.

Appellants Graham and Lohrke received athletic scholarships from the University of Louisville for participating in the Louisville football program for the 1983–84 school year. They reported for football training in August 1983 but prior to the start of the academic year they withdrew from the

team for personal reasons. The University then cancelled the scholarships without any hearing. Paying their own tuition and fees, the appellants completed the fall semester at the University. During the semester, they appealed the cancellation of their scholarships to the University Financial Aid Committee which held a hearing and subsequently upheld the termination of the scholarships.

On April 3, 1984, appellants filed a law suit in Kentucky state court seeking to recover the amount of the tuition and fees they paid when their scholarships were cancelled. Prior to filing that action, Graham had successfully sought readmittance to the University football team. Graham was kicked off the team, however, when it was discovered that he had filed the state court action. Graham repeatedly requested, but was denied, readmittance to the team after that point.

On August 21, 1984, the Franklin Circuit Court of Kentucky entered summary judgment in the appellants' favor "in the amount of the costs of tuition, board and fees as awarded under the contract for the Fall semester of 1983 plus costs of this action, with interest...." The University satisfied this judgment.

In the fall of 1984, Graham enrolled in Western Kentucky University. Western Kentucky, like the University of Louisville, is classified as a Division I school under the guidelines of the National Collegiate Athletic Association (NCAA). Graham wanted to play football at Western Kentucky, but he was unable to do so because of two NCAA rules. The first rule provides that a student-athlete transferring from one Division I school to another is not eligible to participate in NCAA sports at the new school for one academic and calendar year. This "transfer rule" states in pertinent part:

A transfer student from a four-year institution shall not be eligible for any NCAA championship until the student has fulfilled a residence requirement of one full academic year (two full semesters or three full quarters), and one

full calendar year has elapsed from the first regular registration and attendance date at the certifying Division I or Division II institution. At a Division III institution, eligibility is not permitted for one calendar year from the student's official withdrawal date from the previous institution.

NCAA Bylaw 5–1–j–(7). The second pertinent NCAA rule provides that an athlete's eligibility must be completed within five calendar years from the time the athlete first enrolls in college. The "five-year rule" states in pertinent part:

(a) Division I—The student-athlete shall complete his or her seasons of participation within five calendar years from the beginning of the semester or quarter in which the student-athlete first registered at a collegiate institution, time spent in the armed services, on official church missions or with recognized foreign aid services of the U.S. government being excepted.

NCAA Bylaw 4–1–(a). The combined effect of these two rules was to prevent Graham from ever playing collegiate football again once he transferred to Western Kentucky, since at that time Graham was in his fifth and final year of eligibility. After Graham sat out the year required by the transfer rule, he was no longer eligible to play due to the five-year rule.

Lohrke never sought readmittance to the University of Louisville football program. Rather, he enrolled at Kentucky Wesleyan University, a Division III NCAA school, where he wanted to play football. Another NCAA rule provides that a student transferring from a Division I to a Division III school is exempt from the transfer rule, and therefore need not sit out one year, as long as the Division I school issues a written release or waiver. The exception provision states in pertinent part:

(m) A transfer student from a four-year collegiate institution is not subject to the residence requirement for NCAA championships under the following conditions:

.    .    .    .    .

(13) If the student transfers to a Division III member institution from a Division I or Division II institution after competing in that sport at the previous institution provided the student received a written release from the director of athletics at the institution from which the student transferred.

NCAA Bylaw 5–1–(m)–(13). The University of Louisville declined to issue a written release for Lohrke, claiming that it could not do so without a written request from Kentucky Wesleyan, which had not been received.

On October 2, 1984, Graham and Lohrke filed the instant action with the district court. In Count I of the complaint Graham asserted that as a result of the University of Louisville's actions and application of the NCAA rules, he had been denied: "(1) his right to a procedural due process hearing guaranteed by the Fourteenth Amendment of the United States Constitution; (2) his substantive due process fundamental right of access to the Courts guaranteed by the First and Fourteenth Amendments to the United States Constitution; and (3) his right to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution because the Defendant University and its Defendant agents permit students who have not filed suit to participate." Graham sought damages, a permanent injunction prohibiting the NCAA and the University of Louisville from preventing him from playing football at Western Kentucky, a declaratory judgment stating that he was eligible to participate in any chosen NCAA football program, and a declaratory judgment against the NCAA requiring it to grant hearings for similarly situated individuals to determine whether in their cases the transfer rule should be waived.

Count II of the complaint contained Lohrke's claims. Lohrke's sole complaint against the University of Louisville concerned its refusal to issue a written waiver permitting him to participate in Kentucky Wesleyan's football program. He alleged that this refusal was an act of retaliation against him for filing his state court action. Lohrke's sole complaint against the NCAA was that its waiver rule did not provide for a hearing to determine whether grounds existed for issuing a waiver. For relief, Lohrke requested either a permanent injunction against the NCAA and the University of Louisville prohibiting them from denying his eligibility to play football at Kentucky Wesleyan *or* a declaratory judgment ordering the University of Louisville to issue a waiver. Lohrke further sought damages and a declaratory judgment against the NCAA prohibiting it from taking any action against Kentucky Wesleyan.

On September 30, 1985, the district court filed its memorandum opinion granting motions to dismiss which had been filed by the University of Louisville and the NCAA. The court found that the appellants had no protected property or liberty interest in participating in interscholastic athletics, and therefore concluded that Graham's dismissal from the Louisville football program in the spring of 1984 was not a deprivation of any "rights, privileges or immunities secured by the Constitution and laws." (Quoting 42 U.S.C. § 1983). The court further found that the University and its officials were cloaked with Eleventh Amendment immunity against the claims for money damages. Further, the court rejected the appellants' contention that they had been denied access to the courts, noting that they had successfully pursued their state court action and were at least temporarily before the federal district court. The court also observed that the University had issued a written release for Lohrke to play football at Kentucky Wesleyan; consequently, Lohrke had received the relief he had requested and his claim against the University for refusing to issue a release was moot.

With regard to the NCAA, the court first discussed the legitimate purposes of the transfer and five-year rules. The court then questioned, but did not decide, whether there was sufficient "state action" by the NCAA to support the § 1983 action against it. The court nonetheless conclud-

ed that the NCAA could not be liable under § 1983 because it had not deprived the appellants of a right secured by the Constitution or laws but had merely impaired their ability to participate in interscholastic athletics—a nonprotected interest. The court therefore concluded that the appellants' complaint against the NCAA failed "to state a claim upon which relief may be granted."

This timely appeal followed the dismissal of the appellants' complaint.

## II.

From the district court's opinion, it is evident that the appellants' complaint was dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. Therefore, on appeal we must examine the complaint in the light most favorable to the plaintiffs, assuming its allegations to be true. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Lee v. Western Reserve Psychiatric Habilitation Center*, 747 F.2d 1062 (6th Cir.1984). Looking at the complaint in this light, we will affirm if "it appears beyond doubt that the [appellants] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

The appellants brought this action under 42 U.S.C. § 1983, invoking subject matter jurisdiction pursuant to 28 U.S.C. § 1343. Section 1343(3) provides the federal district courts with original jurisdiction to hear actions seeking "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." Thus, the two essential elements to the appellants' § 1983 action are: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person

of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). The appellants must establish both of these elements in order to sustain their claims.

## III.

With regard to the claims asserted by Lohrke, we need not consider whether they contain these elements since, as counsel for the appellants conceded at oral argument, Lohrke's claims are now moot. The sole basis of Lohrke's action was the University's refusal to issue a written release pursuant to NCAA Bylaw 5–1–(m)–(13) permitting him to play football at Kentucky Wesleyan. On October 18, 1984, the University issued such a release and Lohrke was able to play at Kentucky Wesleyan. Thus, the basis for Lohrke's complaint no longer exists. Because Lohrke's claims are moot, we affirm the district court's dismissal of them and focus solely on whether Graham's claims were properly dismissed.

## IV.

### A.

■ We first find that the district court properly dismissed Graham's claim against the NCAA. Graham has failed to state a claim against the NCAA because he has not established the first element of a § 1983 action—action under color of state law. The only NCAA actions complained of in the present case were the NCAA's adoption, implementation and enforcement of its rules. While courts have previously found these actions to constitute state action, *see, e.g., Regents of the University of Minnesota v. NCAA*, 560 F.2d 352, 364–65 (8th Cir.), *cert. dismissed*, 434 U.S. 978, 98 S.Ct. 600, 54 L.Ed.2d 472 (1977); *Rivas Tenorio v. Liga Atletica Interuniversitaria*, 554 F.2d 492, 495 (1st Cir.1977); *Howard University v. NCAA*, 510 F.2d 213, 220 (D.C.Cir.1975); *Parish v. NCAA*, 506 F.2d 1028, 1032 (5th Cir.1975); *Associated Students, Inc. v. NCAA*, 493 F.2d 1251, 1254

(9th Cir.1974), the Supreme Court's decisions in *Rendell-Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) and *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), require a different conclusion.

The earlier cases were premised on the theory that indirect involvement by state governments could make conduct normally considered to be private action into state action. The Supreme Court rejected that theory, however, in *Rendell-Baker* and *Blum.* As the Fourth Circuit recognized in *Arlosoroff v. NCAA,* 746 F.2d 1019 (4th Cir.1984), in order to conclude that the NCAA's conduct is fairly attributable to the state it must be established either that (1) the NCAA was serving a function which was traditionally and exclusively the state's prerogative, or (2) the state or its agencies caused, controlled or directed the NCAA's action. *Id.* at 1021–22.

The conduct complained of here is the NCAA's promulgation and application of the transfer and five-year rules. This conduct was taken as part of the NCAA's function in regulating intercollegiate athletics. While the NCAA's regulatory function may be considered a public service, we agree with the conclusion in *Arlosoroff* that "[t]he regulation of intercollegiate athletics ... is not a function 'traditionally exclusively reserved to the state.'" *Id.* at 1021 (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1975)); *see also McHale v. Cornell University,* 620 F.Supp. 67, 70 (N.D.N.Y.1985) ("Regulation of intercollegiate sports cannot fairly be said to be traditionally and exclusively a state function."). Therefore, the first alternative test of state action is not met.

Graham also has failed to establish state action under the second alternative test. We recognize that the rules promulgated by the NCAA are followed by public, state-subsidized institutions such as the University of Louisville, as well as private institutions. That fact, however, does not imply

that the decision to promulgate the transfer and five-year rules was the decision of the state, since state regulation or subsidization of an institution will not alone create action under *Rendell-Baker* and *Blum. Arlosoroff,* 746 F.2d at 1022; *McHale,* 620 F.Supp. at 70. Rather, there must be a showing that the state-supported universities "caused or procured the adoption" of the transfer and five-year rules. *Arlosoroff,* 746 F.2d at 1021. Absent such a showing, the decision to promulgate the rules will not be deemed to have been the state's. Graham has never suggested that the University of Louisville or any other state-supported university caused, directed or controlled the implementation of the transfer and five-year rules. Consequently, we will not infer any state involvement in the NCAA's decision to promulgate the rules.

Since Graham has not shown under either of the alternative tests that the NCAA's conduct is attributable to the state, we conclude that Graham has failed to establish an essential element of his § 1983 action. For that reason, his claim against the NCAA was properly dismissed.[1]

**B.**

We now examine whether Graham has adequately stated a claim against the University of Louisville, its football coach, Robert Weber, and its athletic director, Bill Olson. The parties do not dispute that the action taken by the University through its agents is attributable to the state. Pursuant to Ky.Rev.Stat. § 164.810, the University is a state agency. Consequently, the actions taken by the University's agents were committed by persons acting under color of state law and the first element necessary to a § 1983 action is present.

With regard to the second element—deprivation of a *constitutionally protected right*—Graham contends that the defendants' actions infringed upon his right

---

1. Since we conclude that the first essential element of a § 1983 action is not present, we need not address whether the second element—deprivation of a protected interest—is present.

of access to the courts secured under the First and Fourteenth Amendments.[2] It is beyond dispute that the right of access to the courts is a fundamental right protected by the Constitution. The Supreme Court has found several constitutional bases for this right. *See, e.g., Chambers v. Baltimore & O.R.R.*, 207 U.S. 142, 148, 28 S.Ct. 34, 35, 52 L.Ed. 143 (1907) (right of access is a privilege and immunity secured under article IV of the Constitution and the Fourteenth Amendment); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972) (right of access is one aspect of First Amendment right of petition); *Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974) (right of access is founded in the Due Process Clause). A number of federal circuit courts have likewise found the right of access to the courts to be protected by the First Amendment. *See, e.g., Harrison v. Springdale Water & Sewer Commission*, 780 F.2d 1422, 1427 (8th Cir.1986); *Wilson v. Thompson*, 593 F.2d 1375, 1387 (5th Cir. 1979); *McCray v. Maryland*, 456 F.2d 1, 6 (4th Cir.1972); *Harris v. Pate*, 440 F.2d 315, 317 (7th Cir.1971). Accordingly, interference with or deprivation of the right of access to the courts is actionable under § 1983. *See Harrison*, 780 F.2d at 1428; *Ryland v. Shapiro*, 708 F.2d 967, 972 (5th Cir.1983).

■ Graham cannot claim, however, that the defendants completely denied him access to the courts, since he successfully pursued his state court action to recover the value of his scholarship and was able to file and pursue the present action, albeit unsuccessfully, in federal district court. Graham's claim is therefore not the typical right of access claim. Rather, it is more accurately characterized as a claim of retaliation for the exercise of a First Amendment right. That is, Graham is claiming that he was kicked off the University football team in retaliation for filing the state court action; thus, he claims he was punished for pursuing his First Amendment right of access to the courts. Several federal circuit courts have held "that state officials may not take retaliatory action against an individual designed ... to punish him for having exercised his constitutional right to seek judicial relief...." *Harrison*, 780 F.2d at 1428 (citing cases from the Eleventh, Seventh, Fifth, Third, and Tenth Circuits). Accordingly, Graham has arguably stated a claim actionable under § 1983. We do not decide, however, whether he has in fact done so because we find that his claims against the University, the football coach and the athletic director are barred by the Eleventh Amendment.

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State.

U.S. Const. amend. XI. It precludes not only actions in which the state is directly named as a party, but also actions brought against a state agency or state officer where the action is essentially one for recovery of money from the state treasury. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In *Edelman*, the Court held that the Eleventh Amendment barred any "retroactive award which requires the payment of funds from the state treasury." *Id.* at 677, 94 S.Ct. at 1362. The Court consequently limited the federal courts to providing only "prospective injunctive relief" against state officials sued in their official capacity. *Id.* The Eleventh Amendment does not, however, prevent plaintiffs from bringing suits

---

**2.** Graham has wisely abandoned on appeal the theory that the defendants deprived him of a fundamental right by preventing him from playing intercollegiate football. The courts have consistently held that participation in interscholastic athletics is not a constitutionally protected fundamental right. *See Hamilton v. Tennessee Secondary School Athletic Ass'n*, 552 F.2d 681, 682 (6th Cir.1976); *Jones v. Wichita State University*, 698 F.2d 1082, 1086 (10th Cir.1983); *Colorado Seminary v. NCAA*, 570 F.2d 320, 321–22 (10th Cir.1978); *Parish v. NCAA*, 506 F.2d 1028, 1034 (5th Cir.1975).

against state officials in their individual or personal capacities. *Scheuer v. Rhodes*, 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974).

■ The University of Louisville is a state agency cloaked with Eleventh Amendment immunity. *Martin v. University of Louisville*, 541 F.2d 1171, 1174 (6th Cir. 1976).[3] Accordingly, Graham's claim for damages against the University is barred by the Eleventh Amendment and was properly dismissed.

■ Graham's action for damages against Weber and Olson, the football coach and athletic director, is likewise barred by the Eleventh Amendment since Weber and Olson were sued in their official capacities. We are unpersuaded by Graham's contention that he brought this action against Weber and Olson in their personal, as well as official, capacities. Graham's complaint indicates that this suit was an official-capacity suit. In naming Weber and Olson as defendants, Graham stated that each was at all times "an agent, employee, servant or officer of Defendant University of Louisville." In Count I of the complaint, Graham alleged he was entitled to damages and attorney fees "[s]ince the Defendant University and its Defendant agents ... violated [his] civil rights." At no time did he seek to impose liability on Weber and Olson independent of the University. This indicates that Graham treated this lawsuit at its inception as a suit against the University, premised upon the actions of its agents.

Furthermore, the manner in which Graham has litigated this suit likewise indicates that he sued Weber and Olson in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985) (recognizing that while a complaint may not always clearly specify whether state officials are sued personally or officially, the "course of proceedings" will usually indicate the nature of the suit). Graham has consistently directed all of his arguments to the actions of the University, taken through its agents Weber and Olson.

In light of Graham's complaint and the course of the proceedings, we conclude that Graham brought his damages action against Weber and Olson solely in their official capacities. Since the Eleventh Amendment prohibition of a damages action against a state "remains in effect when State officials are sued for damages in their official capacity," *Graham*, 105 S.Ct. at 3107, the district court properly dismissed Graham's action for damages against Weber and Olson as being barred by the Eleventh Amendment.

The only remaining question is whether Graham has any viable action for injunctive relief against the University or Weber and Olson. If so, such action would not be barred by the Eleventh Amendment. As counsel explained at oral argument, the only injunctive relief that Graham is requesting against the University is to prohibit it from preventing Graham, through application of the NCAA rules, from participating in another college's football program. This relief simply could not be granted against the University since the University has no control over whether another college will apply the transfer and five-year rules to exclude Graham from its football program. That is, the University is not preventing Graham from playing football at another college; rather, it is the prospective college's adherence to the NCAA's rules which prevents Graham from playing. Graham has therefore failed to allege a viable claim for injunctive relief against the University. Consequently, Graham has not asserted a claim against the University which is not barred by the Eleventh Amendment.

---

3. Due to a change in the University's status, our previous finding in *Brown v. Strickler*, 422 F.2d 1000 (6th Cir.1970), that the University of Louisville was not insulated by Eleventh Amendment immunity is no longer a correct statement of law. At the time *Brown* was decided, the University was a municipal university. Now, however, it is a state university pursuant to Ky.Rev. Stat. § 164.810. We observed this change in status in *Martin* where we held that the University had not waived its Eleventh Amendment immunity. 541 F.2d at 1174–76.

Accordingly, having found that the dismissal of all aspects of this action was proper, the judgment of the district court is AFFIRMED.