878 F.2d 1436
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gladys BIVER, Plaintiff-Appellee,
v.
SAGINAW TOWNSHIP COMMUNITY SCHOOLS and Board of Education of
the Saginaw Township Community Schools and Gundars
Strautneiks, Defendants-Appellants.
 No. 88-1667.
 United States Court of Appeals, Sixth Circuit.
 July 10, 1989.
 
 Before RALPH B. GUY, Jr. and RYAN, Circuit Judges, and DAVID D. DOWD, Jr., District Judge.*
 PER CURIAM.
 
 
 1
 Gladys Biver, an employee of the Saginaw Township Community Schools (the District), brought suit against her employer, along with the Board of Education of the Saginaw Township Community Schools (the Board) and Gundars Strautneiks, who was the principal of MacArthur High School where Biver worked at all relevant times. Biver claimed that the defendants treated her discriminatorily and retaliated against her in violation of the Elliott-Larsen Civil Rights Act, Mich.Comp.Laws.Ann. Sec. 37.2101, et seq. (Elliott-Larsen Act), 42 U.S.C. Secs. 1983 and 2000(e). With the parties' acquiescence, the district court submitted the case to the jury under only section 1983 and the Elliott-Larsen Act, and the jury returned a verdict against the defendants. The defendants now appeal. Because we find that the jury verdict is hopelessly confusing, and that erroneous instructions further added to the confusion, we remand for a new trial.
 
 I.
 
 2
 Gladys Biver has been a physical education instructor in the Saginaw public school system since 1966. Biver originated a girls' basketball program at MacArthur High, and from 1971 to 1975 Biver coached the newly-formed team. During this time, Biver noticed a disparity in the level of compensation that the District offered coaches of boys' teams versus that offered girls' coaches, so Biver filed a complaint with the EEOC. The parties subsequently settled the suit, and the District equalized compensation. For "personal reasons," Biver stepped down from her position as girls' basketball coach in 1975, making clear her desire to return to coaching at a later time.
 
 
 3
 In 1978, Biver decided she wanted to resume coaching, so from 1978 through 1984 she applied for a number of coaching positions at MacArthur High. Biver applied for positions coaching the boys' as well as the girls' teams, but the District did not hire her for any coaching position. Biver sued the District, along with the Board and two individuals, for sex discrimination and for retaliation, based on her having filed the earlier lawsuit. In October 1986, this court affirmed a jury verdict in Biver's favor. Biver v. Saginaw Township Community Schools, 805 F.2d 1033 (6th Cir.1986) (unpub. op.).
 
 
 4
 The case before the court today thus involves Biver's third action against the District,[1] with the present suit encompassing allegedly improper actions taken between January 15, 1985 and December 24, 1986. Biver claims that shortly after the verdict in her favor in the second suit--the trial took place in January 1985--the defendants, particularly Strautneiks, began treating Biver much more harshly than other teachers. According to Biver's complaint, Strautneiks confronted Biver with groundless allegations, reprimanded her for smoking in an area Biver had been led to believe was appropriate for smoking, challenged her teaching methods in front of students, claimed that Biver lied frequently, and suggested that she failed to grade her final exams. Additionally, Strautneiks conducted a formal review of Biver's teaching during the 1984-85 school year (the evaluation was part of an official review process to which all teachers were periodically subjected). Biver maintains that Strautneiks did not conduct this evaluation objectively, as he assertedly required much more of Biver than of other teachers. After performing the evaluation during the entire year, Strautneiks and District Personnel Coordinator Patricia Murphy decided not to formally complete the evaluation. Finally, Biver alleges that Murphy improperly singled Biver out for punishment by refusing to pay Biver for the time she spent testifying in her suit against the District, although the District did compensate District witnesses for the time they spent at trial.
 
 
 5
 All of this discriminatory conduct allegedly occurred during the second half of the 1984-85 school year. During the summer following this school year, Saginaw Township Community Schools began accepting applications for the available job as head girls' basketball coach at Eisenhower High School,[2] and Biver applied. Personnel Coordinator Murphy was in charge of the hiring, and she formed a committee composed of herself, two District employees involved with the Eisenhower athletic programs, a District administrator, and one physical education expert from outside the District. The committee selected a male applicant for the position, and Biver claims the decision resulted from discriminatory and retaliatory considerations.
 
 
 6
 Conditions for Biver worsened when she returned to school for the 1985-86 school year. Although teachers were very rarely evaluated two years in a row, Strautneiks informed Biver that she was to be evaluated again in 1985-86. Testimony established that the evaluation year was full of conflicts between Biver and Strautneiks, with Strautneiks allegedly holding Biver to much stricter standards than other evaluated teachers. Strautneiks concluded the review process by filing an extremely critical review of Biver in which he recommended that she be put on probation and re-assigned to teaching business classes. Biver contends that this was the first time the school administration had ever levied any criticisms against her. Biver filed this suit in April 1986. Shortly thereafter, Strautneiks and Murphy met and agreed not to place Biver on probation--they determined that doing so would have been illegal under Michigan law because Biver was a tenured teacher--but decided that Biver would be evaluated again in 1986-87, for an unprecedented third consecutive year.
 
 
 7
 Biver filed a supplemental complaint in December 1986, alleging that the retaliatory conduct continued into the 1986-87 school year. In September 1986, Strautneiks sent Biver a formal letter criticizing her for disobeying regulations and allowing her students to run off-campus errands. Biver complained to the acting superintendent of schools, notifying him that she had been teaching at Eisenhower at the time of the alleged wrongdoing, meaning that her students actually never left campus to run the errand. Murphy, who had not investigated the situation before directing Strautneiks to write the critical letter, wrote a letter of apology and notified Biver that she would not be evaluated in 1986-87.
 
 
 8
 Biver's case came to trial before a jury in 1988, and the jury found against all defendants. According to the district court's reading of the jury verdict, the District was ordered to pay $184,500 in compensatory damages, while Strautneiks was held liable for $35,500 in compensatory and $35,500 in punitive damages. After the district court denied motions for a new trial and to alter or amend the judgment, the defendants appealed.
 
 II.
 
 9
 On appeal, defendants make a number of arguments to suggest that the district court committed reversible error. While many of defendants' specific arguments are without merit, we decline to address all of them because we find errors that compel us to order a new trial.
 
 A. The Verdict Form
 
 10
 Perhaps chief among the problems presented on appeal is the verdict form submitted to the jury. Despite the fact that this is a complex case, involving at least two defendants, two distinct types of improper actions (discrimination and retaliation), and alleged violations of two very different laws (the Elliott-Larsen Act, Mich.Comp.Laws Ann. Sec. 37.2101 and 42 U.S.C. Sec. 1983), the verdict form provides for only three possibilities. The verdict form reads:
 
 
 11
 We, the jury, find for the plaintiff and against the defendants jointly ______
 
 
 12
 or
 
 
 13
 We find for the plaintiff and against the defendant school board only ______
 
 
 14
 or
 
 We find for both defendants ______
 
 15
 This form, on which the jury checked the first option, provides this court with no guidance as to whether the jury found Strautneiks guilty of discrimination and/or retaliation, and whether his actions were thought to have violated Michigan and/or federal law. Similarly, we can only hypothesize as to the basis of the jury verdict against the District. The defendants requested a more detailed verdict form, and we are convinced that their request should have been granted.
 
 
 16
 The defendants persuasively argue that Strautneiks could only have been found guilty of retaliating against plaintiff, as he was not at all involved in the decision as to the vacant coaching position.[3] However, the verdict nowhere indicates whether the jury properly found him guilty of retaliating,[4] or impermissibly found him liable for discrimination.
 
 
 17
 The lack of specificity is even more troublesome in the verdict against the school district. As discussed more fully in connection with the district court's instructions, the standards for Mich.Comp.Laws Ann. Sec. 37.2101 and 42 U.S.C. 1983 liability are very different. Under the federal law, the district may be held liable only if its improper actions are part of an impermissible custom or policy. Pembaur v. City of Cincinnati, 475 U.S. 469 (1986); Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978). Additionally, there is no vicarious liability for municipal entities based on the actions of their non-policy-making employees. Monell, 436 U.S. at 694. Conversely, the standards under the Elliott-Larsen Act mirror those of Title VII, where vicarious liability of an employer for the acts of employees is possible, and where intentional discrimination and retaliation are prohibited regardless of whether they are part of an official policy. Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1013-14 (6th Cir.1987); Jenkins v. Southeastern Michigan Chapter, American Red Cross, 141 Mich.App. 785, 369 N.W.2d 223 (1985). Because the allowable considerations are so dissimilar, it is impossible for this court, on reviewing the verdict form, to determine whether the jury based its verdict upon inappropriate theories.
 
 
 18
 Even if we were convinced that the jury decision as to liability somehow could be fully supported by valid theories, irresolvable ambiguity nevertheless remains present in the damage awards. After trial, the defendants moved for a new trial on the ground that, inter alia, the jury's damages award was ambiguous. The district judge rejected this claim and said his initial interpretation of the damages award was clearly correct in the context of the case. We are not so certain. On the first line of the verdict form section dealing with damages, the jury said that it awarded $220,000 against the defendants jointly. After the numbers "$220,000" the jury wrote "(total)." The jury then filled in the next line on the verdict form, in which it assessed damages of $184,500 against the "school board alone." However, the verdict form contained no line for the jury to assess an amount of actual damages liability against Strautneiks. Instead, the final line completed by the jury held Strautneiks liable for $35,500 in punitive damages. Despite the fact that the $35,500 against Strautneiks and the $184,500 levied against the school board add up to $220,000, and the jury expressly indicated that its award of $220,000 was "total" damages, the trial court held that the verdict form called for $184,500 in compensatory damages against the school board, $35,500 in compensatory damages against Strautneiks, and $35,500 in punitive damages against Strautneiks. While an argument can be made to support such an interpretation of the verdict form, the district court's reading is by no means compelled.
 
 
 19
 We recognize that a district court has wide discretion in ruling upon a defendant's motion for a new trial. According to the rule applicable to the present defendants' motion based on the ambiguity of the damages award:
 
 
 20
 Generally, the grant or denial of a new trial is purely within the discretion of the trial court and will not be reversed except upon a showing [of] abuse of discretion. Whittington v. New Jersey Zinc. Co., 775 F.2d 698 (6th Cir.1985); Gordon v. Norman, 788 F.2d 1194 (6th Cir.1986). Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment. Balani v. Immigration and Naturalization Service, 669 F.2d 1157 (6th Cir.1982).
 
 
 21
 Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989). In this case, we conclude that the district court did, in fact, abuse its discretion in ruling that the damages award is not unacceptably ambiguous. When thus confronted by an ambiguous verdict, a court has no alternative but to vacate the verdict and order a new trial.
 
 
 22
 [W]here a verdict is so uncertain, ambiguous, contradictory, or illogical that it clearly cannot be ascertained ... what facts were found and the court cannot reasonably construe the language so as to give a fact to what the jury unmistakably found as a basis of a judgment thereon, the vice in the verdict is more than formal.
 
 
 23
 McGowan v. Cooper Industries, Inc., 863 F.2d 1266, 1273 (6th Cir.1988), citing Anderson's Executrix v. Hockensmith, 322 S.W.2d 489, 490-91 (Ky.1959); United States v. Hotzler, 742 F.2d 1457 (6th Cir.1984) (unpub. op.). The district court should have granted defendants' motion and held a new trial, taking care to ensure that the jury made clear the theories upon which it based its findings, and that the amount of any judgment ordered was properly allocated and set forth as to the individual defendants.
 
 B. The Instructions
 
 24
 Along with the ambiguity of the verdict form, certain errors in the instructions given to the jury suggest that a new trial is appropriate. The first such error relates to the awarding of damages against Strautneiks. In discussing why he feels his interpretation of the ambiguous verdict form is correct, the district judge stresses the fact that he can safely assume the jury meant to award Biver compensatory damages against Strautneiks, because he expressly directed the jury "that it could award punitive damages only if it awarded actual or compensatory damages." (App. at 102). The record indicates that the court did, in fact, so instruct the jury. While, unlike the district court, we do not find it so apparent that the jury adhered to these instructions, it is certain that these instructions inaccurately describe the law. Punitive damages, in fact, may be assessed in a section 1983 case even when the factfinder awards no compensatory damages. Carlson v. Green, 446 U.S. 14, 22 n. 9 (1980); Baltezore v. Concordia Parish Sheriff's Dept., 767 F.2d 202 (5th Cir.1985), cert. denied, 474 U.S. 1065 (1986); Endicott v. Huddleston, 644 F.2d 1208 (7th Cir.1980). Thus, the jury must have followed the instructions and adhered to an incorrect legal standard, or ignored the instructions and accurately applied the law; either of these two alternatives is unacceptable.
 
 
 25
 Equally as troubling are the instructions dealing with vicarious liability. The district court instructed the jury:
 
 
 26
 If you find that any agents of the school district violated the plaintiff's rights ..., then such violation is attributable to the school district as a matter of law.
 
 
 27
 In other words, under the evidence in this case, there is no way that you could find that any of the school district agents, individually or collectively, violated her rights as defined herein without finding that the school district violated her rights.
 
 
 28
 (Tr. 1333). While this might be an adequate instruction for a case involving just the Elliott-Larsen Act (Mich.Comp.Laws Ann. Sec. 37.2201(a) specifically includes in the definition of an employer the employer's agent), this instruction is erroneous as it relates to 42 U.S.C. Sec. 1983. Since Monell, this court has recognized that an entity "may not be held liable under Sec. 1983 based upon a respondeat superior theory simply for having an employee or employees who may commit a wrong." Pilarowski v. Macomb County Health Dept., 841 F.2d 1281, 1284 (6th Cir.), cert. denied, 109 S.Ct. 133 (1988). Rather, as the Court in Monell makes clear, "it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under Sec. 1983." Monell, 436 U.S. at 694. Subsequent Supreme Court cases have expanded the situations in which acts can be deemed to represent policy or custom, see Pembaur v. Cincinnati, 475 U.S. 469; Oklahoma City v. Tuttle, 471 U.S. 808 (1985); Owen v. City of Independence, 445 U.S. 622 (1980), but the law still holds that a governmental defendant may not be liable under section 1983 without some affirmative proof that the allegedly unconstitutional acts of its employees were part of an official policy or custom. Beddingfield v. City of Pulaski, Tennessee, 861 F.2d 968, 971 (6th Cir.1988); Frost v. Hawkins County Board of Education, 851 F.2d 822, 827-28 (6th Cir.), cert. denied, 109 S.Ct. 529 (1988); Molton v. City of Cleveland, 839 F.2d 240, 243-44 (6th Cir.1988), cert. denied, 109 S.Ct. 1345 (1989). Here, the instructions provided by the court allowed the jury to assess respondeat superior liability but did not require consideration of whether the allegedly retaliatory and discriminatory acts of Murphy and Strautneiks were part of a District policy or custom. While we recognize and appreciate the difficulty involved in tailoring comprehensible instructions that accurately track the divergent theories in a case involving claims under both the Elliott-Larsen Act and section 1983, we cannot approve instructions that permit a jury to base a finding of section 1983 liability on the grounds of respondeat superior.
 
 
 29
 Because the instructions did not accurately describe the governing legal standards, and because this court is unable to determine, from the verdict form, how much the jury assessed in damages and what legal theories it relied upon, we must order a new trial. The decision of the district court is REVERSED and this case is REMANDED for a new trial.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Court, Northern District of Ohio, sitting by designation
 
 
 [1]
 Although plaintiff names both the Board and the District in her complaint, and at various times seems to treat them as separate defendants, it is clear that for the purposes of this suit they are one unit. The school district, acting through the school board, allegedly violated plaintiff's rights. While the action seems to be against two defendants, the district court quite properly instructed the jury that there was only one governmental defendant. The verdict form allowed damages only against one government defendant, along with the individual defendant. The terms "District" and "Board" both refer to the same defendant
 
 
 [2]
 Pursuant to the judgment handed down by the district court in January, 1985, the District had to appoint Biver as head coach the next time a position--either as boys' or girls' coach--opened at MacArthur High. At the time of the Eisenhower opening, however, the verdict was still being appealed, and the judgment did not entitle Biver to any special consideration for the opening at Eisenhower
 
 
 [3]
 We reject plaintiff's argument that all of the alleged mistreatment she received at the hands of the defendants was both retaliatory and discriminatory. Other than in connection with the coaching decision, Biver never presented proof tending to show that she was treated differently because she is a woman. Rather, all of the evidence demonstrated that defendants singled Biver out for harassment in order to punish her for bringing previous lawsuits. Plaintiff's claim that the harassment was designed to force plaintiff out of the district and thereby eliminate her as a potential, female coach is too tenuous. The only potentially discriminatory act was the decision not to hire Biver as the coach of the girls' varsity basketball team at Eisenhower High School
 
 
 [4]
 Both before and during trial, the parties vigorously contested the issue of whether 42 U.S.C. Sec. 1983 recognizes a cause of action for retaliatory conduct. The district court correctly noted that section 1983 can countenance such a claim. The crucial factor under 42 U.S.C. Sec. 1983 is not the retaliation itself, but whether the retaliatory conduct violated some basic constitutional or federally created right. While the defense takes an unassailable position in asserting that the federal civil rights statutes are not violated because an actor violates Title VII, Great American Federal Savings & Loan Ass'n v. Novotny, 442 U.S. 366 (1979); Poe v. Haydon, 853 F.2d 418, 428-29 (6th Cir.1988), cert. denied, 109 S.Ct. 788 (1989); Day v. Wayne County Bd. of Auditors, 749 F.2d 1199, 1204 (6th Cir.1984), this does not mean that section 1983 is "pre-empted" by Title VII. Rather, the fact that an action violates Title VII is not enough, standing alone, to establish section 1983 liability. If, however, an action violates Title VII and a constitutional right, 42 U.S.C. Sec. 1983 does create a cause of action. Although very imprecisely pleaded, there is no question that the alleged retaliatory conduct, if it occurred, acted as an impermissible infringement upon Biver's constitutional right of access to the courts. This right of access is protected by both the first amendment and by the due process clauses of the fifth and fourteenth amendments, although Biver admits that her complaint alleged only fourteenth amendment violations. Wolff v. McDonnell, 418 U.S. 539 (1974), citing Johnson v. Avery, 393 U.S. 483 (1969) (right of access is founded in the due process clause); California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972) (right of access to the courts is one aspect of the first amendment right to petition). When actors, like the defendants here, take actions that have a chilling effect on an individual's ability to seek redress through the courts, those actors violate a constitutional right and "interference with or deprivation of the right of access to the courts is actionable under Sec. 1983." Graham v. National Collegiate Athletic Ass'n, 804 F.2d 953, 959 (6th Cir.1986); Ryland v. Shapiro, 708 F.2d 967 (5th Cir.1983). The fact that Strautneiks' conduct may have violated Title VII is irrelevant; the alleged retaliatory acts interfered with Biver's constitutional right of access to the courts and thus created a cause of action under 42 U.S.C. Sec. 1983