Charles MILBURN, Jr., a minor, by
Charles B. MILBURN, his father
and next friend, Plaintiff–Appellant,

v.

ANNE ARUNDEL COUNTY DEPART-
MENT OF SOCIAL SERVICES; Esther
Carpenter, individually, and as the For-
mer Director of Anne Arundel County
Department of Social Services; Eliza-
beth Tyler, individually, and as Super-
visor, Anne Arundel County Depart-
ment of Social Services; Sergio Alva-
rez, M.D.; North Arundel Hospital, a
Maryland Corporation; Hazel Gent;
Wendy L. Tucker; Karl T. Tucker; Bal-
timore City Hospitals; Anne Arundel
County, Maryland, a Municipal Corpo-
ration; Judith F. Plymyer, individually,
and as Caseworker, Anne Arundel
County Department of Social Services,
Defendants–Appellees.

No. 88–3916.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 1, 1988.

Decided March 31, 1989.

Rehearing Denied April 21, 1989.

Vincent Anthony Mulieri, Annapolis, for
plaintiff-appellant.

Ralph S. Tyler, Asst. Atty. Gen. (J. Jo-
seph Curran, Jr., Atty. Gen., Baltimore,
Md., on brief), Ronald Gordon Dawson (A.
Gwynn Bowie, Jr., Smith, Somerville &
Case, Annapolis, Md., on brief), Deborah
Sweet (Whiteford, Taylor & Preston, Barry
J. Henderson, Baltimore, Md., Richard C.
Burch, Mudd, Harrison & Burch, Guerdon
Macy Nelson, Elijah Dale Adkins III,
Anderson, Coe & King, Towson, Md., Neal
M. Janey, City Sol., William R. Phelan, Jr.,
Sp. Sol., Baltimore, Md., David Samuel Bli-
den, Deputy County Sol., Annapolis, Md.,
on brief), for defendants-appellees.

Before WIDENER, CHAPMAN, and
WILKINS, Circuit Judges.

WIDENER, Circuit Judge:

Charles Milburn appeals the decision of
the district court dismissing his complaint
against both the public and private defen-
dants. As the complaint does not support
a cause of action, we affirm.

Milburn was voluntarily placed by his
parents in a foster home through the state
placement system at the age of 23 months.
The Maryland Department of Social Servic-
es placed him in the licensed foster home of
Karl and Wendy Tucker, where he re-
mained from June 10, 1971 until August of
1973.

During the period of time which he spent in the Tucker home, Milburn sustained significant injuries on four separate occasions for which he needed medical treatment. In January of 1972, Milburn was treated at North Arundel Hospital for multiple bruises and a fracture of the right femur. The hospital personnel who treated Milburn reported to the Department of Social Services (DSS) in writing that the injuries aroused their suspicion of suspected child abuse. The report detailed the child's injuries and that he displayed fear of the foster mother. Defendant Hazel Gent, a nurse at the hospital, communicated over the telephone to defendant Esther Carpenter, Director of DSS, the same concerns noted in the written report.

In November of 1972, plaintiff was treated for a deep laceration over the left eye. In January of 1973, an incident occurred in the foster home in which the plaintiff's hands were severely burned. The caseworker, Judy Finn (now Judy F. Plymyer), learned of the injury during a visit to the home the following day. Miss Finn allowed Mrs. Tucker to treat the burns at home. When the child became in need of further medical treatment for those burns several weeks thereafter, he was taken to Baltimore City Hospital for surgery on his hands and wrists resulting in permanent disfigurement. The hospital employees who treated Milburn suggested that the injuries were the result of child abuse, and it is now alleged Milburn's hands were immersed in hot water by the Tuckers as punishment. However, upon recommendation of defendants Finn, Carpenter and Elizabeth Tyler of DSS, Milburn was returned to the Tucker home. Subsequently, in May 1973, Milburn suffered a broken tibia. In August of 1973, Milburn was placed in a different foster home.

A complaint was filed on August 5, 1983 by Charles Milburn, Sr. as the father and next friend of the plaintiff. The complaint under 42 U.S.C. § 1983 alleges that the defendants violated plaintiff's rights under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments based on continued and negligent care and placement in the home of the Tuckers. The complaint further alleges violations of state and other federal law. All of the defendants filed motions to dismiss.

A hearing was held before a magistrate on the defendants' motions. The magistrate, in a thorough memorandum opinion, recommended that the motions of the defendants be granted. Plaintiff filed exceptions to the magistrate's report, and the district court, after a review of those claims to which exception was taken, adopted the magistrate's recommendation of dismissal, albeit for somewhat different reasons on some issues. Milburn appeals.

Milburn's principal contention is his claim filed under 42 U.S.C. § 1983.[1] He sued Karl T. Tucker and Wendy Tucker, his wife, the foster parents. He also sued Anne Arundel County, Maryland; Anne Arundel County Department of Social Services (DSS) and Esther Carpenter, Judy Finn Plymyer, and Elizabeth Tyler, officers or employees of DSS; North Arundel Hospital Association, Inc., and Hazel Gent, a nurse, and Sergio Alvarez, a physician, employees of North Arundel Hospital Association; Baltimore City Hospitals and Eduardo Mazzi, Ophelia Janes, physicians, and Maryland Hartge, employees of Baltimore City Hospitals. It is acknowledged that North Arundel Hospital is a private entity and Baltimore City Hospitals are a part of the municipality.

The facts giving rise to the cause of action against the various defendants are that Tucker and wife badly abused Milburn as a child while Milburn was in their care as foster parents. He alleges that the Department of Social Services and Anne Arundel County and the employees of DSS displayed gross negligence and deliberate

---

**1.** The plaintiff also contends that the district court erred in holding that he failed to state a claim under 42 U.S.C. § 608(f) which is a part of the AFDC program. The district court held that § 608(f) did not apply because there was no judicial determination which removed the child from the home of its parents. We agree with the district court. We are also of opinion the district court did not abuse its discretion in declining to permit an amendment to the complaint some two years following the issuance of the magistrate's report.

indifference to his welfare in that they continued his placement in the foster home of the defendants Tucker. The Hospital defendants and their employees are charged with much the same type of cause of action. It is charged that they either failed to report the abuse of the plaintiff in the manner provided by law or failed to adopt procedures for such reporting.

After this case was argued before us, the Court decided *Deshaney v. Winnebago County Department of Social Services,* — U.S. —, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), which is dispositive of most of the issues in this case. Other than the fact that it was one of the natural parents in *Deshaney* who administered the physical child abuse, as opposed to the foster parents here, the essential facts of *Deshaney* and this case are indistinguishable.

In *Deshaney,* the father had severely beaten the child. The child and his mother brought suit under 42 U.S.C. § 1983 against Winnebago County, Wisconsin, its Department of Social Services, and various individual employees of the department. The complaint alleged a loss of liberty under the Fourteenth Amendment by their failure "... to intervene to protect ... [the child] against a risk of violence at his father's hands, of which they knew or should have known." — U.S. at —, 109 S.Ct. at 1002. So, the cause of action is essentially the same as pleaded here against all of the defendants except the Tuckers, the foster parents.

The Court described the cause of action as "... failing to provide ... [the child] with adequate protection against his father's violence," — U.S. at —, 109 S.Ct. at 1003, again essentially the same claim which is asserted here.

Despite the fact that the defendants in *Deshaney* were subdivisions of the State or employees thereof, the Court held that no cause of action was stated against the defendants under § 1983. "As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." — U.S. at —, 109 S.Ct. at 1004. The Court reasoned that when the State, by the affirmative exercise of its power, so restrains an individual's liberty that it renders him unable to care for himself and at the same time fails to provide for his basic human needs, food, clothing, shelter, medicinal care and reasonable safety, the State transgresses the substantive limits set by the Eighth Amendment and the Due Process Clause. But the Court reasoned that that analysis simply had no application in the case because the injuries suffered by the child "... did not occur while he was in the State's custody, but while he was in the custody of his natural father, who was in no sense a state actor." [Footnote omitted] The Court recited that while the State may have been aware of the dangers faced by the child, it played no part in their creation nor did it do anything to render him any more vulnerable to them. — U.S. at —, 109 S.Ct. at 1006. And, in note 9, at p. —, at p. 1006 of 109 S.Ct., omitted from the last quotation above, the Court stated that had the State by the affirmative exercise of its power removed the child from free society and placed him in a foster home operated by its agents, a different situation might obtain, but the Court went on to say it expressed no opinion on the validity of that analogy, for it was not before the Court.

■ Applying *Deshaney* to the facts of this case, we are of opinion that a cause of action is not stated against the hospital and county and municipal defendants and their employees. The most that any of them might have been charged with was a failure to protect the plaintiff against private violence. The State of Maryland by the affirmative exercise of its power had not restrained the plaintiff's liberty; he was voluntarily placed in the foster home by his natural parents. And the injuries to the plaintiff did not occur while he was in the custody of the State of Maryland, rather while he was in the custody of his foster parents, who were not state actors, as we will demonstrate below.

■ Whether the Tuckers are state actors depends on the facts of the case, as it must in each instance, see *Burton,* infra, p.

726, 81 S.Ct. at 862, and upon the case law commencing with *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), in which the Court decided that for a private party to fall within the scope of § 1983 as a state actor, the State must have so far insinuated itself into a position of interdependence with the charged party that it must be recognized as a joint participant in the challenged activity which, on that account, cannot be considered to have been so "purely private." 365 U.S. at 725, 81 S.Ct. at 862. For the relationship of the State to the Tuckers, the plaintiff depends on only a contract his foster parents signed with Anne Arundel County Department of Social Services, an agency home approval of the Tuckers home as a foster home for two children, and the Maryland statutes, Article 27, § 35A (1970), as that statute relates to reporting the suspected child abuse of the plaintiff. Significantly, the plaintiff depends on no other Maryland statute. The position of plaintiff is succinctly stated in his brief that the Tuckers were state actors because ". . . the State produced the foster parents through its licensing procedure and promised to supervise the placement of the plaintiff in the Tuckers foster home." Brief, p. 25. The contract, however, provided only the most general guidelines for the Tuckers' foster home and that DSS would provide board, medical care, clothing and supervision of the child during his placement. It did not provide, and it is nowhere alleged, that the Tuckers received any compensation for their services as foster parents. The contract did not provide, either in general or in detail, for any conduct of the foster parents in their home with respect to the foster child, and all day to day parenting decisions were left to the foster parents. The approval of the Tuckers' home was in very nearly the briefest possible form and merely stated that the home meet the standards as defined by the rules of the Maryland State Department of Social Services. So, neither the contract nor the approval form provides for any kind of intimate relationship between the State and the Tuckers, nor is there any detailed guidance of the Tuckers nor any regulation of the conduct complained of.

Following *Burton*, the Court decided *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). In that case, discharged employees sought to maintain a § 1983 cause of action against a regulated utility on the ground that the utility was a state actor. The Court held that the utility was not a state actor and reasoned, on p. 350, that the ". . . mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." [Footnote omitted] The Court stated that ". . . the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." 419 U.S. at 351, 95 S.Ct. at 453. The Court further reasoned that the case might have been different if it were dealing with the exercise by the utility of some power traditionally associated with sovereignty, 419 U.S. at 353, 95 S.Ct. at 454–55, and the fact that regulation of the utility was extensive and detailed did not by itself convert its action into that of the State. 419 U.S. at 350, 95 S.Ct. at 453.

The Court again considered the question in three cases in 1982, *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); and *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

*Kohn* was a case involving a private school which specialized in dealing with students who had experienced difficulty completing public high schools. Many of the students had drug, alcohol or behavioral problems, and the school was extensively regulated and funded by the State of Massachusetts, although it retained its private character, and its directors were not public officials or chosen by the State. The school discharged some of its teachers and in the ensuing suit, on account of that discharge, the teachers claimed under

§ 1983 that the act of the school was the act of the State. The Court held that the school was not subject to suit under § 1983 and that the ultimate issue in such cases was "... is the alleged infringement of federal rights 'fairly attributable to the State?'", quoting from *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). The Court based its decision on its construction of *Jackson* "... that the question is whether the function performed has been 'traditionally the *exclusive* prerogative of the State'", quoting from *Jackson*, 419 U.S. at 353, 95 S.Ct. at 455. (Italics in original) Despite the fact that the education of maladjusted high school students was a public function, because such education was not the exclusive province of the State, the Court gave that as a principal reason for deciding that the school was not a state actor. It also considered the other factors mentioned in *Blum* which we now address.

*Blum* involved nursing homes which transferred or discharged a class of medicaid patients without notice or an opportunity for a hearing, and the question was whether the nursing homes, acting in cooperation with the State of New York, which reimbursed them for the reasonable cost of the health care of the patients involved, were responsible for such discharges or transfers under § 1983 as the acts of the State. The nursing homes, in addition to receiving apparently all of their income involved there from the patients also involved there, were extensively regulated. The Court held that the conduct of the nursing homes was not state action for the purposes of § 1983. The Court set out a three-step analysis necessary to resolve the case. First, with respect to the extensive regulation, the Court held that regulation by itself was not enough, but that there had to be a sufficiently close nexus between the State and the challenged action so that the action of the actor might be fairly treated as that of the State. The Court continued that constitutional standards are invoked "... only when it can be said that the State is *responsible* for the

specific conduct of which the plaintiff complains." 457 U.S. at 1004, 102 S.Ct. at 2786. (Italics in original) Second, while the facts will vary from case to case, a State normally will not be responsible for a private decision unless it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice in law must be deemed that of the State. Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives. 457 U.S. 1004-05, 102 S.Ct. at 2785-86. "Third, the required nexus may be present if the private entity has exercised powers that are 'traditionally the exclusive prerogative of the State'", quoting from *Jackson*, 419 U.S. at 353, 95 S.Ct. at 455. 457 U.S. at 1005, 102 S.Ct. at 2786. The Court applied the facts of that case and found state action not present. The Court found that the decisions to transfer or discharge were that of the physicians involved, not the State, and thus were the decisions of private parties. It further found that the decisions involved were not those traditionally and exclusively made by the sovereign.

Subsequent to these cases, we decided *Arlosoroff v. National Collegiate Athletic Association*, 746 F.2d 1019 (4th Cir.1984), which was an attempt by a college tennis player to enjoin as state action, under § 1983, action taken by the NCAA with respect to his eligibility. We decided that the acts of the NCAA were not state action and construed *Jackson, Kohn, Blum,* and *Lugar* mentioned above. We stated, at p. 1022, "It is not enough that an institution is highly regulated and subsidized by a state. If the state in its regulatory or subsidizing function does not order or cause the action complained of, and the function is not one traditionally reserved to the state, there is no state action." So far as *Lugar* was concerned, we found that the clerk of the court and the sheriff involved in that case in the issuance of a writ of attachment were active participants with the creditors.[2]

2. The plaintiff depends on *Duchesne v. Sugarman*, 566 F.2d 817 (2d Cir.1977), which declined

to reconsider the earlier decision of *Perez v. Sugarman*, 499 F.2d 761 (2d Cir.1974). We

Applying those cases to the facts of this case, we are of opinion and come to the conclusion that the Tuckers were not state actors. The State of Maryland was not responsible for the specific conduct of which the plaintiff complains, that is, the physical child abuse itself. It exercised no coercive power over the Tuckers; neither did it encourage them. The care of foster children is not traditionally the exclusive prerogative of the State. Thus, under the analysis of *Blum,* 457 U.S. at 1004–05, 102 S.Ct. at 2785–86, which synthesized the previous cases on the subject, the Tuckers should not be considered state actors. Our conclusion in this respect is consistent with our decision in *Arlosoroff,* p. 1022, because the State of Maryland did not order or cause the action complained of and the function was not one reserved to the State.

This is a case, as was *Deshaney,* which arouses considerable and justifiable sympathy for the plaintiff, assuming he could prove his cause of action. But, as mentioned in *Deshaney,* the circumstances of the injury do not make the Tuckers state actors. Neither do they make those who might have intervened liable under § 1983. The Court in *Deshaney* noted that a State might provide for relief in just such cases, and, in that connection, we note that the plaintiff here has filed his parallel action in the state courts of Maryland, upon the merits of which we, of course, express no opinion.

The judgment of the district court is accordingly

AFFIRMED.

think *Perez* has no application here. In that case, two infant children were held involuntarily by two private children's homes. The homes held the children at the instance of the City of New York and refused to return them to the mothers. We think the finding of the court that the action of the private homes for children in detaining the children, acting at the instance of the city, was state action, is simply not applicable here.