816 F.2d 258
 38 Ed. Law Rep. 1188
 Peter KARMANOS, Jr., Peter Karmanos, III; Compuware Hockey
Club, Plaintiffs-Appellants,
v.
Deane BAKER; Paul W. Brown; Neil D. Nielson; Sarah
Goddard Power; Thomas A. Roach; Veronica Latta Smith;
Nellie M. Varner; James L. Waters, Individually and as
Members of the University of Michigan Board of Regents;
Harold T. Shapiro, Individually, and as President; Don
Canham, Individually and as Athletic Director; National
Collegiate Athletic Association; John Doe; Richard Roe,
Defendants-Appellees.
 No. 85-1896.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 19, 1987.
Decided April 20, 1987.
 
 Erwin B. Ellmann, Jeffrey A. Heldt, argued, Glen M. Bis, Levin, Levin, Garvett & Dill, Southfield, Mich., for plaintiffs-appellants.
 Peter A. Davis, argued, Davis & Fajen, P.C., Edmond F. DeVine (Lead Counsel), argued, Miller, Canfield, Paddock & Stone, Ann Arbor, Mich., George Gangwere, Swanson, Midgley, Gangwere, Clarke & Kitchin, Kansas City, Mo., for defendants-appellees.
 Before KEITH, KRUPANSKY and GUY, Circuit Judges.
 KRUPANSKY, Circuit Judge.
 
 
 1
 Plaintiffs-appellants Peter Karmanos, Jr. (Karmanos, Jr.), Peter Karmanos III (Karmanos III), and Compuware Hockey Club (Compuware) appealed from a final order of the district court dismissing this action initiated pursuant to 42 U.S.C. Sec. 1983.
 
 
 2
 Karmanos III is the son of Karmanos, Jr. In August of 1984, Karmanos III enrolled as a student at the University of Michigan (U of M). Shortly thereafter, he endeavored to qualify for U of M's intercollegiate hockey team, but was declared to be ineligible to participate in intercollegiate ice hockey by the eligibility committee of the National Collegiate Athletic Association (NCAA) as a result of its interpretation of Article III, Section 1 of the NCAA constitution.[1] Karmanos Jr. and Karmanos III thereupon initiated this action in federal district court naming as defendants the NCAA, the U of M Board of Regents and U of M's President and Athletic Director.[2] In their complaint, plaintiffs asserted that the defendants engaged in a conspiracy to declare Karmanos III ineligible to participate in intercollegiate ice hockey, depriving him of his constitutional right to freedom of association and also depriving Karmanos Jr. of his constitutional right to rear his son.
 
 
 3
 The NCAA is an unincorporated association consisting of approximately 800 non-profit public and private colleges and universities. One of the NCAA's primary objectives is to promote fair competition among its member institutions by maintaining uniform standards of scholarship, sportsmanship and amateurism. The U of M is a member of the NCAA. On June 26, 1980, the NCAA issued an official directive which declared all Major Junior A ice hockey teams in Canada and the United States to be professional hockey teams within the meaning of the NCAA Constitution and eligibility rules promulgated thereunder.
 
 
 4
 The record reflected that, pursuant to Karmanos Jr's direction, Karmanos III had completed his final year of high school education in Canada during which time he had, pursuant to contract, played ice hockey with the Canadian Major Junior A hockey league. His contract contained a rider which provided that Karmanos III would not be compensated for his services and that Karmanos Jr. would pay all of his expenses. The contract also incorporated a "Certificate of Independent Advice" which disclosed that Charles J. Carson (Carson) of the Michigan Bar had advised Karmanos III of the implications of the contract whereupon Karmanos III "declared that he fully understood the nature and effect of said Standard Player's Contract."
 
 
 5
 After Karmanos III enrolled at U of M, Dr. Paul W. Gikas, the University's representative for intercollegiate athletics, initiated a hearing before the NCAA's eligibility committee where he argued that Karmanos III was not a professional hockey player because he had not been compensated for playing in the Canadian Major Junior A hockey league. The NCAA eligibility committee denied U of M's appeal on behalf of Karmanos III and declared him to be ineligible for participation in intercollegiate hockey. U of M informed Karmanos III that it would not contest the eligibility determination through litigation, but accorded Karmanos III the option of presenting his case to the NCAA's subcommittee on eligibility appeals. Thereafter, Karmanos III abandoned the NCAA eligibility appeal and initiated this action in federal district court which was subsequently dismissed by the trial court.
 
 
 6
 On appeal, plaintiffs acknowledged that Karmanos III did not have a constitutionally protected right to participate in intercollegiate athletics. See, Graham v. NCAA, 804 F.2d 953, 959 n. 2 (6th Cir.1986); Hamilton v. Tennessee Secondary School Athletic Association, 552 F.2d 681, 682 (6th Cir.1976); Jones v. Wichita State University, 698 F.2d 1082, 1086 (10th Cir.1983); Parish v. NCAA, 506 F.2d 1028, 1034 (5th Cir.1975). However, plaintiffs argued that the defendants' conduct was cognizable pursuant to Sec. 1983 because the interpretation of the NCAA's eligibility rules in the present case restrained Karmanos III from exercising his constitutional right to freedom of association and impinged upon the constitutional right of Karmanos Jr. to rear his child.
 
 
 7
 Karmanos III charged that application of the NCAA's eligibility rules in this case penalized him for exercising his right to freely associate with professional hockey players while he was attending high school in Canada. Contrary to his assertions, the interpretation of the controversial rule did not penalize him for "associating" with professional hockey players, but rather barred him from playing intercollegiate ice hockey with an NCAA affiliated college or university if he had previously played on a professional hockey team. As the district court aptly noted, "[p]laintiff has been and is free to associate with whomever he chooses; defendants have not and do not regulate such association." Karmanos v. Baker, 617 F.Supp. 809, 816 (E.D.Mich.1985).
 
 
 8
 Karmanos Jr. asserted that application of the NCAA eligibility rules in the present case penalized him for exercising his constitutional right to raise his son. However, as the district court recognized "[t]he right to direct the upbringing and education of one's child does not extend so far as to give a father a right to direct his child to play hockey on a professional team without losing his amateur status." 617 F.Supp. at 813. Accordingly, this court concludes that the district court did not err in concluding that plaintiffs' complaint failed to state a constitutional infringement cognizable under Sec. 1983.
 
 
 9
 Moreover, pursuant to this circuit's recent decision in Graham v. NCAA, 804 F.2d 953 (6th Cir.1986), plaintiffs have failed to demonstrate that the NCAA acted under color of state law. In Graham, this court concluded that the NCAA cannot be considered to have acted under color of state law unless (1) it was serving a function which was traditionally and exclusively the state's perogative; or (2) the state or its agencies caused, controlled or directed the NCAA's actions. 804 F.2d at 958. In Graham, the court decided that the first prong of the state action test was not satisfied where the conduct complained of was the promulgation and application of NCAA rules and that the second prong was satisfied only if the plaintiff had demonstrated that a state-supported university caused or procured the adoption of the rules. Id. Because plaintiffs have failed to allege that U of M or any other state-supported university caused, directed or controlled the implementation of the rules at issue herein, plaintiffs have failed to state a claim against the NCAA.
 
 
 10
 This court has considered the plaintiffs' remaining assignments of error, including those advanced by Compuware, and declares them to be without merit.
 
 
 11
 Accordingly, for the reasons set forth above and for the reasons articulated in Judge Feikens' well-reasoned opinion, the judgment of the district court is hereby AFFIRMED.
 
 
 
 [1]
 Article III, Section I of the NCAA Constitution provides that "if [an] individual participates or has ever participated on a team known to the individual or which reasonably should have been known to the individual to be a professional team in that sport, the individual no longer shall be eligible for intercollegiate athletics in that sport."
 
 
 [2]
 The U of M defendants were named both individually and in their official capacities. The U of M defendants are immune from suit for damages in their official capacities under the Eleventh Amendment. Graham v. NCAA, 804 F.2d 953, 959-60 (6th Cir.1986)