891 F.2d 122
 57 Ed. Law Rep. 749
 David BURROWS, a Minor By his Father and Next Friend David
BURROWS; Kyle Robert Hetman, a Minor, By his Father and
Next Friend Ronald C. Hetman; Oreluwa Mahoney, a Minor, By
his Father and Next Friend Joseph Mahoney; Ohio South Youth
Soccer Association, Inc.; Ohio Youth Soccer Association
North, Inc.; Miami Valley Youth Soccer Association,
Plaintiffs-Appellants,
v.
OHIO HIGH SCHOOL ATHLETIC ASSOCIATION, Defendant-Appellee.
 No. 88-3703.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 1, 1989.
Decided Dec. 1, 1989.
 
 William L. Havemann (argued), Richard J. Holzer, Andrew C. Storar, Pickrel, Schaeffer & Ebeling, Dayton, Ohio, for plaintiffs-appellants.
 William S. Heichel, Canton, Ohio, Roger W. Healey (argued), Stephen B. Hoffsis, Buechner, Haffer, O'Connell & Meyers, Cincinnati, Ohio, for defendant-appellee.
 Before KRUPANSKY and RYAN, Circuit Judges; and WILHOIT, District Judge.*
 KRUPANSKY, Circuit Judge.
 
 
 1
 This is a class action for injunctive relief invoking the first and fourteenth amendments of the United States Constitution, 42 U.S.C. § 1983, and 36 U.S.C. § 371 et seq. Plaintiffs-appellants David Burrows, Kyle Hetman, and Oreluwa Mahoney were students who attended high schools in Montgomery County, Ohio, and who were members of their respective public, parochial, and private high schools' interscholastic soccer teams. They purportedly represented a class of approximately 15,000 high school students in Ohio who actively participated in interscholastic and independent[1] soccer prior to November 1, 1987.
 
 
 2
 Plaintiff-appellant Ohio South Youth Soccer Association, Inc. (Ohio South) is a not-for-profit organization chartered under the laws of Ohio to organize and administer the international sport of soccer in southern Ohio as a member of the United States Youth Soccer Association which is the youth division of the United States Soccer Federation (USSF), the national governing body of amateur soccer recognized by the United States Olympic Committee (USOC). Plaintiff-appellant Ohio Youth Soccer Association North, Inc. (Ohio North) is the companion organization representing the same interests in northern Ohio.
 
 
 3
 The United States Youth Soccer Association, as a division of the USSF, sanctions, through its affiliates, Ohio South and Ohio North, a number of soccer leagues to promote amateur competition for youths nineteen years of age and younger, among which is the league in the greater Montgomery County, Ohio area, plaintiff-appellant Miami Valley Youth Soccer Association (MVYSA), an unincorporated organization. Jointly, all plaintiffs-appellants will be referred to herein as "appellants."
 
 
 4
 Defendant-appellee, Ohio High School Athletic Association (OHSAA) is a voluntary, unincorporated not-for-profit association which regulates, supervises, and administers interscholastic athletic competition among its member public, parochial, and private schools in the state of Ohio. The schools attended by plaintiff students are members of the OHSAA.
 
 
 5
 On January 15, 1988, appellants filed an action for preliminary injunctive relief in the United States District Court for the Southern District of Ohio. They alleged that OHSAA, by amending one of its bylaws, in effect penalized the previous year's high school soccer team members who played independent soccer during the spring of any given year with loss of eligibility to play for their high school during the fall of 1988. Appellants alleged essentially three causes of action, the first two pursuant to 42 U.S.C. § 1983: (1) an infringement of plaintiffs' rights of association under the free speech clause of the first amendment to the United States Constitution; (2) denial of equal protection of the law and due process of law under the fourteenth amendment to the Constitution; and (3) that defendant OSHAA's bylaws, if enforced as amended, violate the supremacy clause, article VI, clause 2 of the Constitution in that the bylaws created an obstacle to the accomplishment of the congressional intent expressed in the Amateur Sports Act, 36 U.S.C. § 371 et seq.
 
 
 6
 Appellants petitioned the district court to certify a class action, to declare the bylaw amendment unenforceable, to preliminarily and permanently enjoin the enforcement of the bylaws of OSHAA as amended, and to award reasonable attorney fees and costs accruing as a result of these proceedings. On July 1, 1988, the district court, after a bench trial, entered a judgment for the defendant supported by findings of fact and conclusions of law.
 
 
 7
 Appellants filed a timely notice of appeal to this court.
 
 
 8
 During October of 1987, OHSAA adopted an amendment to its bylaws, to become effective on the first day of January 1988 and thereafter, which foreclosed appellate students from eligibility to compete in interscholastic high school soccer as members of their respective high schools' teams if they had participated as a member of an independent team including appellate Miami Valley Youth Soccer Association during spring competitions in 1988 and thereafter. A similar regulation applied to all "team-oriented" sports such as football and basketball, but not to such "individual" sports as golf, tennis, track and field, and swimming. OHSAA rationalized that the bylaw amendments would (1) prevent unfair development of "power squads" which resulted from team members who played together throughout the entire year as a team at the expense of those high school teams whose players were unable to participate in independent league soccer as a result of geographic, economic, or organizational obstacles; (2) encourage student athletes to participate in a diversity of sports.
 
 
 9
 This court's initial consideration is directed to the threshold issue joined by the parties in their endeavor to cognize a cause of action under color of state law which impinges the fourteenth amendment and 42 U.S.C. § 1983. Although the district court permitted the parties to stipulate that OHSAA's bylaws here in issue constituted state action as a matter of fact, that issue has been addressed and disposed of by this circuit in Graham v. NCAA, 804 F.2d 953, 957 (6th Cir.1986), wherein this court, upon analogous facts, concluded that the National Collegiate Athletic Association (NCAA) was not acting under color of state law. Graham, supra, at 958. In reaching that decision, the Graham court adopted the two-prong test devised by the Fourth Circuit in Arlosoroff v. NCAA, 746 F.2d 1019 (4th Cir.1984). Under that test, to prove that OHSAA was acting under color of state law, appellants had the burden of proving that either (1) OHSAA was serving a function which was traditionally and exclusively the state's prerogative, or (2) the adoption of OHSAA's amendment was caused, controlled, or directed by the state or its agencies. Graham, supra, at 958; Karmanos v. Baker, 816 F.2d 258, 260-61 (6th Cir.1987).
 
 
 10
 OHSAA is clearly an analogous organization to the NCAA. The NCAA is composed of public, parochial, and private universities and colleges, in which membership is voluntary. OHSAA is composed of public, parochial, and private high schools, in which membership is voluntary. Both organizations promulgate and apply rules to promote and protect amateur sports competitions among their respective members. In this case, as in Graham, it is clear that OHSAA, like the NCAA, does not perform a "function 'traditionally exclusively reserved to the state.' " Graham, supra, at 958 (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1975)). Also in this case, as in Graham, plaintiffs failed to show that state-supported institutions " 'caused or procured the adoption' of the ...rules" in issue. Graham, supra, at 958 (quoting Arlosoroff, 746 F.2d at 1021).
 
 This court
 
 11
 recognize[s] that the rules promulgated by the [OHSAA] are followed by public, state-subsidized institutions such as [the high schools attended by plaintiffs], as well as private institutions. That fact, however, does not imply that the decision to promulgate the [amendment to its bylaws] was the decision of the state, since state regulation or subsidization of an institution will not alone create action under Kendell-Baker [v. Kohn, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) ] and Blum [v. Yaretsky, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) ].
 
 
 12
 Graham, 804 F.2d at 958.
 
 
 13
 Consequently, under the rule of Graham, OHSAA has not acted under the color of state law and a cause of action is not cognizable under 42 U.S.C. § 1983 and the fourteenth amendment.
 
 
 14
 Assuming, arguendo, that OHSAA's bylaws, as amended, had been promulgated and enforced under color of state law, appellants' charge of infringed first amendment rights to association arising by foreclosing them from Ohio South's and MVYSA's independent soccer teams is nevertheless unsupportable. The United States Supreme Court has recognized a right "to associate for the purpose of engaging in those activities protected by the First Amendment." Roberts v. United States Jaycees, 468 U.S. 609, 618, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984). This right embraces expressive association "with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." Id. at 622, 104 S.Ct. at 3252. Also protected are private, intimate relationships, such as "marriage, the begetting and bearing of children, child rearing and education, and cohabitation with relatives." Board of Directors of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 107 S.Ct. 1940, 1944, 95 L.Ed.2d 474 (1987).
 
 
 15
 Appellants concede that they do not have a constitutional right to participate in interscholastic soccer, Hamilton v. Tennessee Secondary School Athletic Ass'n, 552 F.2d 681, 682 (6th Cir.1976); accord (by analogy), Graham v. NCAA, 804 F.2d 953, 959 n. 2 (6th Cir.1986), however, they argue that they are penalized for their association with Ohio South and MVYSA.
 
 
 16
 This circuit has already rejected this argument in Karmanos v. Baker, 816 F.2d 258 (6th Cir.1987) and this court reaffirms the conclusions and pronouncements of that disposition. In that case, the NCAA had determined that Karmanos was ineligible to play intercollegiate hockey for the University of Michigan, because Karmanos had played for a Canadian team that the NCAA had designated "professional," even though Karmanos had not been paid. Karmanos initiated an action identical to the one presently before this court on appellate review alleging that the NCAA infringed on his rights by penalizing him for exercising his right of association. This court found no such infringement:
 
 
 17
 Contrary to his assertions, the interpretation of the controversial rule did not penalize him for "associating" with professional hockey players, but rather barred him from playing intercollegiate ice hockey with an NCAA affiliated college or university if he had previously played on a professional hockey team. As the district court aptly noted, "[p]laintiff has been and is free to associate with whomever he chooses; defendants have not and do not regulate such association." Karmanos v. Baker, 617 F.Supp. 809, 816 (E.D.Mich.1985).
 
 
 18
 Karmanos, 816 F.2d at 260.
 
 
 19
 OHSAA does not prohibit appellate students from playing independent soccer, nor does it regulate that association. OHSAA merely prohibits those who have previously played on OHSAA-member high school teams from again playing on those teams, if, in the interim, they have participated in independent outdoor soccer during the school year. Consequently, this court finds no fundamental right to association as argued by the appellants.
 
 
 20
 Appellants also charge a violation of their rights to equal protection under the law pursuant to the fourteenth amendment to the Constitution because the amended bylaws discriminate between students who played both interscholastic and independent soccer during the year immediately preceding any given interscholastic soccer season and those students who did not participate in interscholastic soccer, yet did participate in independent soccer during the same time period. Appellants further assert that the distinction between so-called team oriented sports such as soccer and football, and so-called nonteam oriented sports such as golf and swimming, also violates equal protection principles.
 
 
 21
 Appellants do not argue that a "suspect class" is involved in this dispute. If it was the intention of appellants to seek a "fundamental rights" analysis of equal protection, this court has determined above that no fundamental right is involved. Therefore, any analysis of appellants' charge must in the first instance determine if OHSAA had a rational basis for its classification of student players which inquiry is answered by this circuit's decision in Anderson v. Ohio High School Athletic Ass'n, [754 F.2d 372 (table) ] (6th Cir.1984), which is adopted and incorporated into this published opinion. In that case the court found there "was substantial evidence in the record [as in this case] to show that OHSAA's decision to implement regulations was based upon reasons which were rational, although disputed, and which were within the range of interests which OHSAA would reasonably desire to protect." Id., slip op. at 2-3. In Anderson, the court was interpreting OHSAA Regulation 9.A.3, the specific soccer regulation implementing OHSAA Bylaw 10-2-6, the amended bylaw disputed in this case. Since the amended bylaw merely reimplements Regulation 9.A.3 by changing the standards and procedures for exemption from that regulation, the bylaw amendment must also be found rational.
 
 
 22
 The appellants' third argument addresses the promulgation and enforcement of the bylaw amendment and the resultant alleged violations of the supremacy clause, article VI, clause 2 of the United States Constitution. Appellants do not claim preemption by Congress in the field of high school or Olympic sports programs, only that the bylaw amendment in issue "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" as expressed in the Amateur Sports Act of 1978, as codified at 36 U.S.C. § 371 et seq. See Hillsborough County, Florida v. Automated Medical Laboratories, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (quoting Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); accord Perez v. Campbell, 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233, 242 (1971). Because appellants do not argue general preemption, the issue revolves entirely around the specific language of the statute.
 
 
 23
 The Supreme Court has determined that it will not presume the invalidity of any state regulation absent specific Congressional intent to prohibit the controversial state promulgation. Malone v. White Motor Co., 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978). See also New York State Dep't of Social Services v. Dublino, 413 U.S. 405, 413, 93 S.Ct. 2507, 2513, 37 L.Ed.2d 688 (1973), quoting Schwartz v. Texas, 344 U.S. 199, 202-03, 73 S.Ct. 232, 235, 97 L.Ed. 231 (1952). Appellants rely upon the legislative history of the Amateur Sports Act of 1978 to support their conclusions that it was enacted to curb rivalry among amateur athletic organizations, a rivalry considered to be impairing the abilities of American athletes to compete successfully on an international level. See S.Rep. No. 770, 95th Cong., 2d Session, 2-3 of the Senate Report, U.S.Code Cong. & Admin.News 1978, p. 7478. However, when construing a statute, a court must first look to the language of the statute itself. Blum v. Stenson, 465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984).
 
 
 24
 The specific language of the statute relied upon by the appellants in the instant case is that the USOC, created by the act, shall "provide for the swift resolution of conflicts and disputes involving amateur athletes, national governing bodies, and amateur sports organizations, and protect the opportunity of any amateur athlete ...to participate in amateur athletic competition." 36 U.S.C. § 374(8) and a provision that "national governing bodies" of amateur sports were under a duty to "minimize through coordination with other amateur sports organizations, conflicts in the scheduling of all practices and competitions,...." 36 U.S.C. § 392(a)(2).
 
 
 25
 The statute further states that an object and purpose of the USOC is to "exercise exclusive jurisdiction ... over all matters pertaining to the participation of the United States in the Olympic Games" and "obtain for the United States ... the most competent amateur representation possible in each competition and event of the Olympic Games...." 36 U.S.C. § 374(3) and (4). A national governing body must be "free from outside restraint." 36 U.S.C. § 391(b)(4).
 
 
 26
 Appellants argue that the above statutory extrapolations reflect a congressional intent to delegate carte blanche authority to organizations under the USOC's umbrella to implement any necessary action within the bounds of the statute to recruit and train amateur athletes for international competition. They further assert that the totality of the Act mandates no interference from amateur athletic organizations such as OHSAA to impose rules that denigrate the authority and activities of sanctioned organizations. The argument is effectively discredited by the clearly articulated expressions of 36 U.S.C. § 396 which provides "[a]ny amateur sports organization which conducts amateur athletic competition, participation in which is restricted to a specific class of amateur athletes (such as high school students ...) shall have exclusive jurisdiction over such competition." 36 U.S.C. § 396. Given the language of § 396, it appears to this court that organizations such as OHSAA were specifically excluded from the directives of §§ 374(8) and 392(a)(2) of the Amateur Sports Act of 1978. See White Motor Co., and Dublino, supra.
 
 
 27
 OHSAA posits that all students are free to elect independent soccer if they so desire at the expense of forfeiting their eligibility to play interscholastic soccer and that the limitation does not discourage full development of Olympic caliber athletes as suggested by the appellants. This court agrees, and therefore, this court finds no conflict with the supremacy clause.
 
 
 28
 Accordingly, the decision of the district court is AFFIRMED for the reasons stated herein and for the reasons incorporated in the July 1, 1988 decision of the trial court.
 
 
 
 *
 The Honorable Henry R. Wilhoit, Jr., United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 The term "independent soccer" is used to designate any soccer team falling within the category of "independent team" as defined by the bylaws of the Ohio High School Athletic Association:
 Section 3. Definition of Independent Team.
 10-3-1. An independent team is an organization composed of players in or out of school which participates in a contest, no matter whether admissions, collections of expenses are involved, or whether a coach is present or not and regardless of whether instruction is given. Examples of independent teams are Sunday School, Intramural, Y.M.C.A. Shop, Hi-Y, F.F.A., City Recreation, etc.