**BRENTWOOD ACADEMY,**
**Plaintiff–Appellee,**

v.

**TENNESSEE SECONDARY SCHOOL ATHLETIC ASSOCIATION; Ronnie Carter, Executive Director and Individually, Defendants–Appellants.**

No. 98–6113.

United States Court of Appeals, Sixth Circuit.

Argued April 23, 1999.

Decided June 21, 1999.

Charles Hampton White (argued and briefed), Richard L. Colbert (briefed), Cornelius & Collins, Nashville, Tennessee, for Defendants–Appellants.

H. Lee Barfield, II (briefed), William Scott Sims (briefed), Bass, Berry & Sims, Nashville, Tennessee, Bobby Lee Cook, Cook & Connelly, Summerville, GA, G. Thomas Nebel (briefed), Nashville, Tennessee, James F. Blumstein (argued and briefed), Vanderbilt University Law School, Nashville, Tennessee, for Plaintiff–Appellee.

John J. Kitchin (briefed), Kansas City, Missouri, for Amicus Curiae National Federation of State High School Associations.

Edmund J. Sikorski, Jr. (briefed), Ann Arbor, Michigan, for Amicus Curiae Michigan High School Athletic Association, Inc.

Steven L. Craig (briefed), Heichel, Craig & Prelac, Canton, Ohio, for Amicus Curiae Ohio High School Athletic Association.

Mallory V. Mayse (briefed), Colombus, Missouri, for Amicus Curiae Missouri State High School Activities Association.

Danny C. Reeves (briefed), Greenebaum, Doll & McDonald, Lexington, Kentucky, for Amicus Curiae Kentucky High School Athletic Association.

Leonard E. Ireland, Jr. (briefed), Clayton, Johnston, Quincey, Ireland, Felder, Gadd, Roundtree, Gainesville, Florida, for Amicus Curiae Florida High School Activities Association, Inc.

Terrence E. Kiwala (briefed), Rooks, Pitts & Poust, Chicago, Illinois, for Amici Curiae Illinois High School Association.

Before: GUY, SUHRHEINRICH, and GILMAN, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

This appeal involves the constitutionality of the Tennessee Secondary School Athletic Association's "recruiting rule." The rule prohibits member schools from "[t]he use of undue influence ... to secure or retain a student for athletic purposes...." Brentwood Academy, a private school and a member of the Tennessee Secondary School Athletic Association ("TSSAA"), was found to have violated the rule on two separate occasions. After exhausting its internal appeals of TSSAA-imposed sanctions, Brentwood brought the present lawsuit to allege violations of its First and Fourteenth Amendment rights, as well as a host of other claims.

The district court granted summary judgment in favor of Brentwood on its claim that the recruiting rule violates the First Amendment, and enjoined TSSAA from enforcing the rule. TSSAA brings this interlocutory appeal, claiming that the district court erred in determining that TSSAA is a state actor, and further arguing that even if it is a state actor, that the recruiting rule is not violative of the First Amendment. For the reasons set forth below, we **REVERSE** the judgment of the district court, **VACATE** the injunction, and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

Brentwood Academy, a private Christian school located in Brentwood, Tennessee, is by all accounts something of a high school football powerhouse. The football team has been nationally ranked by *USA Today,* has amassed a 310–43 record over the past 28 years (as of March, 1998), and has won at least 7 TSSAA state championships. Brentwood's basketball team is also well known in athletic circles.

In 1997, various rival high school coaches alleged that Brentwood had violated TSSAA rules in a number of respects. TSSAA conducted an investigation, which focused on three specific incidents. The first incident occurred when Brentwood's football coach provided free tickets to a Brentwood football game for a middle school coach and two student athletes. The second claim also involved the football

coach, who sent a letter to all incoming ninth-graders accepted at Brentwood that invited them to join the football team for spring practice while they were still in the eighth grade. The final incident involved the basketball coach conducting an impermissible off-season practice for Brentwood's current players. Because the off-season practice by the basketball coach allegedly violated the aptly-named "off-season practice rule" rather than the "recruiting rule," it is not at issue in this case. The two actions involving the football coach, however, are based on alleged violations of the recruiting rule and are thus the focus of this appeal.

As set forth in TSSAA's regulations, the recruiting rule provides as follows:

> The use of undue influence on a student (with or without an athletic record), his or her parents or guardians of a student by any person connected, or not connected, with the school to secure or retain a student for athletic purposes shall be a violation of the recruiting rule.

TSSAA By-laws, Article II, Section 21. The regulations then contain approximately three pages of interpretation to assist member schools in understanding the types of "influence" that TSSAA considers "undue."

With cooperation from Brentwood, TSSAA completed its investigation in August of 1997. TSSAA concluded that all three incidents described above violated TSSAA rules. Brentwood was declared ineligible to participate in TSSAA tournaments in football and basketball for one year, and was placed on probation for two years. By the end of TSSAA's two-step internal appeals process, the penalties had actually increased, banning Brentwood from the tournaments for two years, placing the school on probation for four years, and fining the school $3,000.

Brentwood filed the present suit against TSSAA on December 12, 1997, seeking an injunction against the enforcement of the recruiting rule and alleging, among other state and federal claims, a violation of 42 U.S.C. § 1983. The § 1983 claim charged that TSSAA had deprived Brentwood of its First and Fourteenth Amendment rights under color of state law. Cross-motions for summary judgment were filed with respect to all claims except for Brentwood's allegations of antitrust violations. The district court granted summary judgment in favor of Brentwood on its First Amendment claims and enjoined enforcement of the recruiting rule. It granted summary judgment in favor of TSSAA on one state-law claim, and denied both motions on the remaining counts. TSSAA now appeals the district court's decision that TSSAA violated the First Amendment, arguing that it is not a "state actor," and that even if it is, its actions were valid under the First Amendment.

## II. ANALYSIS

### A. Standard of review

We review *de novo* the district court's grant of summary judgment. *See, e.g., Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.1997). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial is presented when there is sufficient "evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252, 106 S.Ct. 2505.

### B. State action and TSSAA

To prevail on a First Amendment claim, the plaintiff must first make a show-

ing that the defendant is a "state actor." "When Congress enacted § 1983 as the statutory remedy for violations of the Constitution, it specified that the conduct at issue must have occurred 'under color of' state law; thus liability attaches only to those wrongdoers who carry a badge of authority of a State and represent it in some capacity...." *NCAA v. Tarkanian,* 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988). The Supreme Court has mandated careful adherence to the "state action" requirement because it "preserves an area of individual freedom by limiting the reach of federal law." *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

■ Analyzing the structure and function of TSSAA is therefore essential to the inquiry before us. Founded in 1925, TSSAA is a voluntary association incorporated under the laws of Tennessee. It is composed of 290 public schools and 55 private schools. TSSAA's constitution and bylaws specify that the administrative authority of TSSAA is vested in a Board of Control consisting of nine members elected by the member schools. Each Board member represents a particular region of Tennessee. The Board members are principals or superintendents of the member schools. At all times relevant to this action, the Board was comprised exclusively of public high school administrators, although private high school administrators are equally eligible for election to the board.

TSSAA receives no funding from the state, nor are the salaries of its staff paid by the state. Its revenues are derived primarily from gate receipts at TSSAA tournaments. TSSAA schedules only the state tournaments, not the vast majority of interscholastic contests. Significantly, when it uses public facilities for these events, it must enter into a contract with the state to do so and pay for the privilege.

There is no authority anywhere in the Tennessee Code authorizing the state to conduct interscholastic athletics or to em-

power another entity to conduct such athletics on its behalf. Although a State Board of Education rule in effect from 1972 to 1995 "designated" TSSAA to conduct interscholastic athletics, that rule has since been repealed. The current rule states that public schools in Tennessee are authorized to join TSSAA, but are also authorized to withdraw from membership if they so choose.

These facts make clear that TSSAA is not an arm of the government. The more difficult question is whether we are required to treat it as such because it is so intertwined with the government that its actions should be considered as those of the state.

## C. The *Blum* trilogy

The Supreme Court has devoted considerable attention to the question of what constitutes state action. In 1982, the Court decided three cases that defined the contours of the state action doctrine with respect to nominally private parties. *See Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), and *Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). These cases have collectively become known as the *"Blum* trilogy."

In *Blum,* the Court reviewed a challenge to a private nursing home's transfer and discharge policy. The nursing home was extensively regulated by the state of New York and received a significant percentage of its funding from the federal government in the form of Medicaid reimbursement. In holding that the nursing home was not a state actor, the Court concluded that being subject to state regulation does not by itself convert the actions of a private organization into state action. *See id.* at 1004, 102 S.Ct. 2777. The nursing home's use of government funds was also held insufficient to establish state action. *See Blum,* 457 U.S. at 1005, 102 S.Ct. 2777.

In *Lugar*, Edmondson Oil had attached Lugar's property to satisfy an outstanding debt. Lugar sued, alleging that Edmondson Oil had acted jointly with the state to deprive him of his property without due process of law. The Court held that Lugar had to establish that the conduct allegedly causing the deprivation of a constitutional right was "fairly attributable" to the state. *See Lugar*, 457 U.S. at 937, 102 S.Ct. 2744. In determining the question of fair attribution, the party charged with the deprivation must be a person who may be fairly said to be a state actor, either because he acted in his capacity as a state official, or because he has acted together with or has obtained significant aid from state officials. *See id.* The *Lugar* Court concluded that because the prejudgment attachment statute required judicial action to be enforced, there was sufficient government involvement to constitute state action.

Finally, in *Rendell–Baker*, the Supreme Court held that a school operated by a private corporation did not exercise state power when it discharged teachers (allegedly in violation of their First Amendment rights), even though the school had contracts with the state to pay for the education of most of the student body and most of its funding came from the government. *See Rendell–Baker*, 457 U.S. at 839–43, 102 S.Ct. 2764.

## D. Sixth Circuit Precedent

The *Blum* trilogy provides a framework for determining what conduct may be fairly attributable to the state. It does not set out a single test, because the Court has held that determinations of state action must be made on a case-by-case basis. *See Lugar*, 457 U.S. at 939, 102 S.Ct. 2744. In attempting to enforce the mandate of the *Blum* trilogy, our circuit has applied three different tests. These are (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship test. *See Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992) (holding that a private, non-profit corporation that contracted to provide mental health services to a county government in Ohio was not a state actor). The focus of all three tests is to determine whether the alleged state actor's actions are "fairly attributable to the state." *Id.*

### 1. The public function test

■ The public function test asks whether "the private entity exercise[s] powers which are traditionally exclusively reserved to the state, such as holding elections, or eminent domain." *Wolotsky*, 960 F.2d at 1335 (internal citations omitted). Clearly the conduct of interscholastic sports is not such a power. The Supreme Court stated in *San Francisco Arts & Athletics, Inc., v. United States Olympic Committee*, 483 U.S. 522, 545, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987), that "[n]either the conduct nor the coordination of amateur sports has been a traditional government function." We also note that all of the circuits that have considered the issue, including our own, have held that there is no constitutional right to participate in interscholastic sports. *See Alerding v. Ohio High Sch. Athletic Ass'n*, 779 F.2d 315 (6th Cir.1985); *Niles v. University Interscholastic League*, 715 F.2d 1027 (5th Cir. 1983); *Hebert v. Ventetuolo*, 638 F.2d 5 (1st Cir.1981); *Moreland v. Western Pennsylvania Interscholastic Athletic League*, 572 F.2d 121 (3d Cir.1978); *Albach v. Odle*, 531 F.2d 983 (10th Cir.1976). In light of these precedents, TSSAA cannot be considered a state actor under the public function test.

### 2. State compulsion

■ The state compulsion test requires that the party seeking to establish state action prove that the state has so coerced or encouraged a private entity to act that the choice of that entity must be regarded as the choice of the state. *See Wolotsky*, 960 F.2d at 1335. As detailed in Part II.B. above, the state of Tennessee's interaction with TSSAA has been minimal. The

state's most significant involvement with TSSAA was the now-repealed Board of Education rule "designating" TSSAA to conduct interscholastic activities. The Supreme Court has made clear, however, that designation alone is not enough to turn a private actor into a state actor. In *Jackson v. Metropolitan Edison*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), a customer whose power was turned off for non-payment argued that he was entitled to a hearing under the Due Process Clause of the Fourteenth Amendment. The Court held that even though Pennsylvania had granted the power company a monopoly and the public utility board had explicitly authorized the regulations in question, there was no state action because the state had not directed or ordered that the customer's power be terminated. *See id.* at 358, 95 S.Ct. 449.

The state of Tennessee has far less contact with TSSAA than Pennsylvania had with Metropolitan Edison. The Pennsylvania legislature granted Metropolitan Edison a monopoly, heavily regulated it, and had a state oversight board that actually approved the power shut-off regulations. In the present case, the Tennessee legislature has never even mentioned TSSAA, much less given it any special authority. As a result, Brentwood has failed to establish that TSSAA is a state actor under the state compulsion test.

### 3. Symbiotic relationship

■ The remaining and therefore dispositive question is whether TSSAA is a state actor under the "symbiotic relationship" test. *See Wolotsky*, 960 F.2d at 1335. A symbiotic relationship exists when there is "a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Id.* In *Crowder v. Conlan*, 740 F.2d 447, 450–51 (6th Cir. 1984), this court held that neither extensive state regulation nor state funding of a private entity are sufficient to support a

finding of a symbiotic relationship. Instead, a "State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* at 450 (quoting *Blum*, 457 U.S. at 1004, 102 S.Ct. 2777.)

#### a. Burrows

*Burrows v. Ohio High School Athletic Association*, 891 F.2d 122 (6th Cir.1989), is instructive in this regard. In *Burrows* this court considered a challenge to an Ohio High School Athletic Association (OHSAA) rule that deprived students of one year of interscholastic eligibility if they participated in soccer leagues outside of the school system. After reviewing the structure and functions of OHSAA, the *Burrows* court concluded that it was not a state actor. *Burrows* held that in order to prove that a high school athletic association is acting under color of state law, a plaintiff has the burden of proving that the association's action was "caused, controlled or directed by the state or its agencies." *Id.* at 125. This Brentwood has failed to do in the present case.

Because *Burrows* is the most recent pronouncement by our court on the question of whether a state high school athletic association is a state actor, we would under normal circumstances look no further in finding persuasive support for our conclusion that TSSAA is not a state actor. For reasons unknown, however, *Burrows* does not cite either of two earlier Sixth Circuit cases that discuss the state-actor status of OHSAA and reach the opposite conclusion. We are therefore obligated to consider each of these prior cases.

#### b. Yellow Springs

The earlier of the two uncited cases is *Yellow Springs v. Ohio High School Athletic Association*, 647 F.2d 651, 653 (6th Cir.1981). Both the district court and Brentwood rely heavily on *Yellow Springs*

to support their conclusion that TSSAA is a state actor. They reason that OHSAA and TSSAA are functionally indistinguishable, and that *Yellow Springs* is controlling because it precedes *Burrows.*

■ If they are correct, then *Yellow Springs* would necessarily bind us. We agree with Brentwood that when a later decision of this court conflicts with the holding of a prior decision, the earlier case should control. *See Walker v. Mortham,* 158 F.3d 1177, 1188–89 n. 25 (11th Cir. 1998) (holding that, when faced with conflicting precedent, the earlier cases must control even if later cases are better reasoned). *See also Salmi v. Secretary of Health & Human Serv.,* 774 F.2d 685, 689 (6th Cir.1985) (holding that a panel of this court cannot overrule the decision of another panel, and that the prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this court sitting en banc overrules the prior decision.) The holding of *Yellow Springs,* however, is not in conflict with either *Burrows* or our present decision.

■ In *Yellow Springs,* a school district brought a Title IX challenge to an OHSAA rule that prohibited co-ed teams in contact sports. *See* 20 U.S.C. §§ 1681–88. In reciting the facts of the case, this court wrote that "OHSAA's character as a semi-official in its activities and its symbiotic relationship with the state lead to the conclusion that the trial judge correctly found state action." *Yellow Springs,* 647 F.2d at 653. Brentwood argues that this statement is binding in the case before us. We disagree. *Yellow Springs* involved Title IX, a statute enacted to discourage sex discrimination in education regardless of whether the action was governmental or not. Unlike claims brought under the Fourteenth Amendment, private entities may be liable under Title IX without a showing of state action, as long as they are a recipient of federal funds. *See Horner v. Kentucky High Sch. Athletic Ass'n,* 43 F.3d 265, 271 (6th Cir.1994) ("Title IX prohibits sex discrimination under any education program or activity receiving federal funds.") Because the *Yellow Springs* discussion of state action in the context of Title IX was superfluous, and the body of the *Yellow Springs* analysis concentrated on Title IX, the statements about state action are *dicta* and do not have the force of law.

### c. *Alerding*

This brings us to *Alerding v. Ohio High School Athletic Association,* 779 F.2d 315 (6th Cir.1985), the other relevant case not cited by *Burrows.* Brentwood argues that even if *Yellow Springs* is not controlling authority, we are still bound by *Alerding.* *Alerding* involved a challenge to an OHSAA rule that prohibited students who lived in other states from participating in interscholastic athletics in Ohio. Student-athletes affected by the rule sued OHSAA pursuant to 42 U.S.C. § 1983, alleging an infringement of their rights under the Privileges and Immunities Clause of the Fourteenth Amendment. The entire body of the opinion is devoted to a discussion of the students' claims, which the court ultimately rejected.

*Alerding*'s mention of the state action issue is relegated to a single footnote. It provides no analysis on this point whatsoever, and cites only one case, *Yellow Springs,* which dealt with the state action question in *dicta.* More importantly, the relevant footnote reads as follows:

> OHSAA is a state actor for purposes of § 1983 because Ohio has implicitly delegated to OHSAA its power to regulate and organize interscholastic activities. [citing *Yellow Springs* ].

*Alerding,* 779 F.2d at 316 n. 1. Thus, Alerding's finding of state action was premised exclusively on Ohio's "implicit delegation." In contrast, Tennessee explicitly *revoked* its designation of TSSAA to regulate and organize interscholastic athletics when the State Board of Education's rule

to that effect was repealed in 1995. Because we find this distinction fundamental, we conclude that *Alerding* does not dictate the outcome of the present case.

### E. Tarkanian's footnote 13

Finally, we note that in finding state action, the district court relied on the fact that the Supreme Court indicated in *dicta* that a high school athletic association might potentially be a state actor. *See NCAA v. Tarkanian,* 488 U.S. 179, 193 n. 13, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988) ("The situation would ... be different if the membership consisted entirely of institutions located within the same state, many of them public institutions created by the same sovereign.") In the very same footnote, however, the majority opinion notes that all nine justices agreed that even if an athletic association is a state actor when dealing with a public school, it "was not acting under color of state law in its relationships with private universities." As a result, we do not find that the Supreme Court's comments are controlling in the present case.

### F. TSSAA not a state actor

Based on the above analysis, we conclude that (1) Brentwood has failed to establish that TSSAA's actions are fairly attributable to the state of Tennessee, and (2) we are not obligated to hold otherwise because of any prior binding precedent. As a result, no § 1983 claim may be brought against TSSAA by a member school that has voluntarily associated with the private organization. We therefore have no need to reach the merits of Brentwood's claims under the First Amendment. In so stating, we do not necessarily endorse the wisdom of the rule that TSSAA is attempting to enforce in this case. Brentwood has made strong arguments that the rule is vague and not well-tailored to the perceived evil sought to be avoided, which in turn may lead to arbitrary enforcement. Such complaints, however, are to be resolved among the membership of the TSSAA, not in the federal courts. We agree with the Fifth Circuit's statement that

> we are not super referees over high school athletic programs. Questions about eligibility for competition may loom large in the eyes of youths, even parents. We do not disparage their interest in concluding, as here, that these issues are not of constitutional magnitude.

*Hardy v. University Interscholastic League,* 759 F.2d 1233, 1235 (5th Cir.1985).

### III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the district court's grant of summary judgment in favor of Brentwood, **VACATE** the injunction, and **REMAND** the case for further proceedings consistent with this opinion.